**In re Jeffrey Lee ROSS, Cynthia Ann Ross, Debtors.**

**Bankruptcy No. 99–50154.**

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division.

April 5, 1999.

Marshall D. Cohen, Columbus, Ohio, for Debtors.

Joseph C. Winner, McFadden Winner & Savage, Columbus, Ohio, for Creditor.

Frank M. Pees, Worthington, Ohio, Chapter 13 Trustee.

## MEMORANDUM OPINION AND ORDER

CHARLES M. CALDWELL, Bankruptcy Judge.

On March 15, 1999, the Court conducted a hearing on the confirmation of the Amended Plan of Jeffrey Lee Ross and Cynthia Ann Ross ("Debtors") and the Objection to Confirmation of AG Acceptance Corporation ("Creditor"). The Creditor objects on the basis of good faith and feasibility. The Court heard testimony and received documents into evidence, and the matter was taken under advisement to allow the Court to review the exhibits and the Amended Plan and supporting documentation that were all filed on the day of the hearing. The Court requested that the Debtors supplement the record with a summary of the data they deem supportive of plan feasibility, and on April 2, 1999, the Debtors filed a Statement in Support of Feasibility. A continued hearing was scheduled for April 5, 1999, to allow the Court to issue its ruling and to conduct a hearing on the motion for modification of stay filed by the Creditor. Based upon a review of the evidence, the Court has concluded that the Debtors have established that the Amended Plan is in good faith; however, they have failed to establish that the Amended Plan is feasible. A brief history of this case illustrates the basis for the Court's ruling.

The Debtors are engaged in farming in the Jackson, Ohio, area, and entered into a secured financing relationship with the Creditor in 1995. The Debtors also receive some

nonfarm income from outside employment and a paper route. The Creditor has asserted a security interest in all of the Debtor's farm-related assets, including equipment, crops, and cash proceeds. The Debtors were able to pay an initial loan; however, the Creditor now claims that as of the date of filing the Debtors were in default with a balance in excess of $35,000.00. The schedules show that prior to filing, a collection proceeding was commenced by the Creditor in the Jackson County Common Pleas Court. On January 8, 1999, the Debtors filed the instant chapter 13 proceeding, and on February 17, 1999, the Creditor filed its Objection to Confirmation.

The Amended Plan filed by the Debtors on March 15, 1999, provides for a twenty-five percent (25%) dividend to unsecured creditors. According to the Standing Chapter 13 Trustee's calculation, the "best interest" dividend is twenty percent (20%), and the plan is projected to last the full sixty (60) months. The Amended Plan provides for monthly payments of between $160.00 and $275.00, with one $3,000.00 monthly payment, one $9,000.00 monthly payment, and five monthly payments in the amount of $9,876.00. Also, on March 15, 1999, to support the funding of the Amended Plan and to provide further disclosure based upon the Creditor's objection, the Debtors filed an Amendment to Schedules I & J, a Disclosure of Farming Acres, a Disclosure of Grain Sold, a 1999 Livestock and Crop Projection, and a Disclosure of Farm Income for 1997. In these pleadings, the Debtors seek to establish: a) they have approximately 231 acres available for farming; b) they have monthly income in the amount of $1,760.56 and monthly living expenses in the amount of $1,485.56, leaving a monthly balance of $275.00 based upon farming, a paper route and the Debtor, Mrs. Ross' employment as a nurse's aid; c) they will have gross farm income in 1999 in the amount of approximately $63,555.00 with farm expenses of approximately $47,013.00, leaving a balance of approximately $16,542.00 to fund living expenses in the amount of $7,542.00 and to fund a large monthly plan payment in the approximate amount of $9,000.00.

These assertions are in stark contrast to evidence offered at the hearing by the Creditor. The Debtors' Schedule F Profit of Loss From Farm for 1996, 1997 and 1998, shows a net loss in the amount of $14,324.00, a net loss in the amount of $11,677.00, and a net profit in the amount of $3,881.00, respectively. The Debtors address this contrast by stating they did not report all of their farm income for some of those years. For example, the Debtors now assert that they had gross farm income in 1997 in the amount of $48,395.31, compared to the amount of $27,470.00 reported on their tax return.

There is also some question on the projections because they are based upon commodity prices above those as of the close of the market the week preceding the hearing, and the prices for corn and soybeans are substantially down from where they were a year ago. Also, the farm income projections do not include any provision for tax liability because, as the Debtors explain, they received a refund for 1998. This projection appears at best rosy if there is a significant failure to report all income for the last few years, as now suggested by the Debtors. The Debtors have not addressed how they might handle any tax penalties and/or interest, and have not prepared and presented to the Court copies of any amended tax returns filed with the Internal Revenue Service. The Creditor also correctly points out that the 1998 gross farm income figure, which is the Debtors' best number, is skewed in that it is based upon the sale of 1997 grain and all of their grain produced in 1998, leaving nothing to sell but whatever is produced this year.

Section 1325 of the United States Bankruptcy Code specifies six criteria that must be examined by the Court in the confirmation process. The two criteria at issue are whether "the plan has been proposed in good faith and not by any means forbidden by law" and whether the Debtors " . . . will be able to make all payments under the plan and to comply with the plan" (feasibility). 11 U.S.C. § 1325(a)(3) and (6).

Regarding good faith, debtors have the burden of establishing that their plans meet this criteria, and courts in this Circuit

have adopted a twelve-part totality of the circumstances test, as follows:

1. the amount of the proposed payments and the amount of the debtor's surplus;

2. the debtor's employment history, ability to earn and likelihood of future increase in income;

3. the probable or expected duration of the plan;

4. the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;

5. the extent of preferential treatment between classes of creditors;

6. the extent to which secured claims are modified;

7. the type of debt sought to be discharged and whether any such debt is nondischargeable in chapter 7;

8. the existence of special circumstances such as inordinate medical expenses;

9. the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;

10. the motivation and sincerity of the debtor in seeking chapter 13 relief;

11. the burden which the plan's administration would place upon the trustee; and

12. whether the debtor is attempting to abuse the spirit of the Bankruptcy Code.

*In re Caldwell,* 895 F.2d 1123, 1125 (6th Cir.1990); *In re Georgeff,* 218 B.R. 403, 406 (Bankr.S.D.Ohio 1998).

In addition, the Court is obliged to take into consideration the statutorily mandated policy that bankruptcy provisions be construed liberally in favor of the debtor. *In re Barrett,* 964 F.2d 588, 591 (6th Cir.1992). The fact that a debtor has engaged in pre-petition dishonest conduct does not require denial of confirmation. Instead, the nature of the conduct must be considered as one factor in the broader context of the totality of the circumstances, and whether the actions indicate a scheme to defraud rather than simply a struggle to make ends meet. *See In re Rose,* 101 B.R. 934, 941 (Bankr. S.D.Ohio 1989); *In re Gilmore,* 217 B.R. 228, 229–30 (Bankr.S.D.Ohio 1998).

On the issue of good faith in this case, the Debtor, Mr. Ross, has engaged in highly questionable pre-petition conduct. For example, the testimony of the Debtor, Mr. Ross, demonstrates that prior to filing, he sold grain in the names of other parties to avoid paying the Creditor that claims a security interest. The Debtor, Mr. Ross, also testified that various pieces of farm equipment listed on security documents were never his property, and that some equipment subject to the Creditor's security interest has been sold without its permission. The Debtor, Mr. Ross, also testified that the sum of $8,000.00 in cash on hand at the date of filing has been spent for crop inputs and living expenses, even though it is subject to the Creditor's alleged security interest. Finally, the Debtor, Mr. Ross, testified that during some of the years preceding the bankruptcy filing he failed to include all farm income on his tax returns based upon the sale of grain in the names of others. In mitigation, the Debtor, Mr. Ross, testified that he had no intent to mislead the Creditor regarding equipment owned, but instead sought to list equipment available to him through family members. The Debtor, Mr. Ross, testified that grain was sold in the names of others in order to gain enough income to continue operations and to cover living expenses. The Debtor, Mr. Ross, testified that equipment sold was of nominal value, and that the cash on hand at filing was used for living expenses and approximately $5,000.00 in crop inputs for next year.

While such actions are not to be condoned, based upon the testimony of the Debtor, Mr. Ross, and the congressional mandate that bankruptcy provisions be liberally construed in favor of providing relief to debtors, the Court concludes that the Amended Plan is in good faith. The dividend offered is above the best interest dividend, and the budget submitted by the Debtors is sparse, devoting all available resources to plan payments. The Debtors appear to be sincerely trying to repay their creditors while maintaining farm

operations. It is the Court's conclusion that the Debtors were doing everything possible to maintain their family and to maintain the farm operations, even at the cost of engaging in activities that are less than honest. The Court views their actions not as fraudulent but as misguided, and for this reason cannot find that they should be denied bankruptcy relief.

■ The Creditor next objects to confirmation on the basis that the Amended Plan is not feasible. This fact-intensive confirmation criteria requires debtors to establish and courts to find, considering all the circumstances, that there is a reasonable likelihood of success of plan completion, and that debtors will be able to comply with all plan terms. *In re Erbaugh,* 199 B.R. 367, 369 (Bankr. S.D.Ohio 1996); *In re Craig,* 112 B.R. 224, 225 (Bankr.N.D.Ohio 1990); *In re Wilkinson,* 99 B.R. 366, 368–369 (Bankr.N.D.Ohio 1989).

■ The Creditor's opposition is based upon tax return information supplied by the Debtors for the last three years which show gross income from farming in the amounts of $14,919.00, $27,470.00, and $60,343.00, respectively. The Creditor asserts that when these gross sums are averaged, the result is gross income of $34,244.00 that is significantly below the sum of farm expenses ($47,013.00) projected by the Debtors in their Amended Schedules I & J recently filed. The Creditor asserts that even if the Court factors in that the Debtors have under reported their farm income to the Internal Revenue Service and uses a higher 1997 number recently supplied by the Debtors ($48,395.31 compared to $27,-470.00), the average is only increased to the sum of $41,219.00. The Creditor further asserts that the 1998 gross farm income figure is artificially high since it includes 1997 and all of the 1998 crops. Finally, the Creditor points out that, contrary to the Debtors' assertion, grain prices are on a downward trend.

■ Based upon a review of all the evidence, the Court reaches the same conclusion as the Creditor, that the numbers do not demonstrate feasibility. The Debtors assert in their April 2, 1999, Supplement that significant changes have been made in their operations; however, the Court views past performance, as detailed in their tax returns, as the most credible indicia of their future performance. Even taking into consideration Federal price supports as a last resort, the Court remains concerned that grain prices projected by the Debtors may be overly optimistic in view of the downward trend over the last year, and the Court notes that the Debtors' tight budget leaves little room for error. They have living expenses to cover, including a child to raise. The Debtors' best farm year, 1998, is skewed and may not accurately represent income potential in future years.

While the Court is sympathetic to the Debtors' plight and would like to provide a reorganization mechanism, given the current state of the record the Court is concerned that confirmation would be followed shortly by dismissal for lack of ability to meet the regular monthly payments and especially the larger annual payments based upon farm income. Further, the Court is concerned that the Debtors have not addressed how they plan to deal with their under reporting of income; i.e., filing of amended returns and ascertaining the amounts of any penalties and/or interest. In addition, amended returns may serve to demonstrate plan feasibility and further aid the Debtors in getting their financial house in order.

■ On this basis the Court concludes the Debtors have not sustained their burden that their Amended Plan is feasible and **DENIES** confirmation. Rather than dismissing the case immediately, however, the Court will grant the Debtors a period of thirty (30) days to file amended tax returns and to obtain competent tax advice regarding any penalty/ and or interest payments that may be associated with the under reporting of income, and to present any further information to support feasibility. During this period, the Debtors are to maintain plan payments on a current basis, and are to continue to implement practices and controls as detailed in the April 2, 1999, Supplement. If no timely action is taken, this case will be dismissed without further notice and hearing.

**IT IS SO ORDERED.**