**In re Charles Alton NOSKER, Debtor.**

**No. 00–31025.**

United States Bankruptcy Court,
S.D. Ohio,
Western Division at Dayton.

March 1, 2001.

Opinion and Order Denying Reconsideration June 18, 2001.

Charles Alton Nosker, Xenia, Ohio, pro se.

Jeffrey M. Kellner, Englewood, Ohio, trustee.

## MEMORANDUM OPINION

JOHN E. HOFFMAN, Jr., Bankruptcy Judge.

This matter is before the Court following a hearing to consider confirmation (the "Hearing") of the Second Revised Chapter 13 Plan (the "Second Revised Plan") filed by Charles Alton Nosker (the "Debtor"). The Debtor, who has appeared *pro se* throughout this Chapter 13 case, filed the Second Revised Plan by attaching it to a pleading entitled "Response to Order of September 29, 2000" (the "Response"). Objections to confirmation of the Second Revised Plan were asserted by the Chapter 13 Trustee (the "Trustee") and two secured creditors: Provident Bank ("Provident") and Greene County Regional Airport Authority ("GCRAA"). The Trustee also has moved for dismissal of the Debt-

or's Chapter 13 case. As a collective response to each of the objections to confirmation and the Trustee's dismissal motion, the Debtor filed a document entitled "Petitioner's Response and Motions" (the "Reply").

At the Hearing, the Debtor testified in support of confirmation of the Second Revised Plan. He was cross-examined by the Trustee and counsel for Provident and GCRAA. At the conclusion of the Hearing, the Trustee requested, by way of oral motion, that the Court determine that the Debtor has willfully failed to abide by orders of the Court, thereby rendering the Debtor ineligible for bankruptcy relief for a period of 180 days following dismissal of his Chapter 13 case. *See* 11 U.S.C. § 109(g).

Having considered the evidence presented at the Hearing and the arguments of the Debtor and counsel, the Court concludes that: (1) the Debtor has failed to demonstrate that the Second Revised Plan meets the confirmation standards of 11 U.S.C. § 1325; and (2) cause exists to dismiss this Chapter 13 case, including the Debtor's unreasonable delay, which has been prejudicial to creditors, and his willful failure to abide by an order of the Court. This memorandum opinion constitutes the Court's findings of fact and conclusions of law. Fed.R.Bankr.P. 7052.

## I. *Procedural and Factual Background*

The procedural history of this case, which was set forth at length in the Order Denying Confirmation of Debtor's Revised Chapter 13 Plan; Setting Deadline for Filing Modified Plan and Objections Thereto; Setting Hearing on Confirmation of Amended Plan and Holding in Abeyance Motion for Relief From Stay Filed by Provident Bank, which was entered on September 29, 2000 (the "September 29

Order"), will not be repeated here. A brief summary follows.

Provident holds a mortgage on real estate owned by the Debtor, which is located at RFD Box 550, U.S. 68 South, Xenia, Ohio (the "Property"). The mortgage secures Debtor's obligation to repay a loan from Provident in the original principal amount of $84,000. Provident asserts that it was owed $86,218.97 as of the date the Debtor filed this Chapter 13 case. The secured claims held by GCRAA and a third secured creditor, Rick Gilliland ("Gilliland"), arise from certificates of judgment filed against the Property.

The Debtor has made no payments to Provident since 1998. In August 1998, Provident filed a foreclosure action in Greene County Common Pleas Court. Provident received a judgment in the foreclosure action in April 1999. On July 21, 1999, the eve of the foreclosure sale, Debtor and his wife filed a Chapter 13 petition, which was eventually dismissed prior to confirmation of a plan. The foreclosure sale was rescheduled for March 9, 2000, but was stayed when the Debtor filed the present Chapter 13 case on March 8, 2000 (the "Petition Date").

The Debtor filed his initial Chapter 13 plan (the "Initial Plan") with the petition. The Initial Plan provided for direct payments of $1,437 to Provident on its secured claim for a period of 60 months, but did not provide for the payment of interest on Provident's claim. Nor did the Initial Plan provide for payment of the secured claims of GCRAA or Gilliland. Objections to confirmation of the Initial Plan were filed by the Trustee, Provident, GCRAA and Gilliland. The Trustee and Provident also filed motions to dismiss the Chapter 13 case. In addition, Provident filed a motion for relief from stay in order to proceed with the foreclosure sale of the Property.

In response to the objections to the Initial Plan, the Debtor filed a revised plan (the "Revised Plan") on May 30, 2000. The Revised Plan was no different in substance from the Initial Plan. Objections to the Revised Plan were asserted by the Trustee, Provident and GCRAA.

Following a hearing to consider confirmation of the Revised Plan, the Court entered the September 29 Order, which denied confirmation of the Revised Plan and required the filing by October 23, 2000 of an amended plan. The September 29 Order provided that the amended plan must fully comply with the requirements of §§ 1322 and 1325 of the Bankruptcy Code (the "Code") and directed the Debtor to file complete schedules of assets and liabilities and a full and accurate statement of financial affairs. The Debtor also was ordered to begin immediately making plan payments to the Trustee as required by 11 U.S.C. § 1326(a) and LBR 3015–3(e)(1).

The Debtor filed the Second Revised Plan, along with revised Schedules A, B, C, I and J and an amended statement of financial affairs, on October 24, 2000. In addition, Debtor's Response supplied information that should have been included in the schedules and statement of financial affairs, e.g., names and ages of his dependents, his income and his wife's income for 1998 and 1999.

The Second Revised Plan is identical to the first two plans proposed by the Debtor: it provides for a direct monthly payment of $1,437 to Provident for a period of 60 months with no interest on Provident's secured claim. Although the Debtor has been in default of his payment obligations to Provident since 1998, the Second Revised Plan does not call for payments to be made to Provident through the Trustee. Rather, "in the interest of economy," the Debtor proposes direct payments to Provident. Response at 2.

Like the Initial and Revised Plans, the Second Revised Plan does not provide for the payment of any creditor other than Provident. According to the Debtor, the Second Revised Plan does not provide for payment of the secured claims held by GCRAA and Gilliland for the following reasons:

They [*i.e.*, the GCRAA and Gilliland claims] are patently illegal as stated and supported in Nosker's response etc. of July 3, 2000, which is incorporated herein by referenced [sic].

In addition, to being scandalous, they are unsecured, non consensual[sic], fraudulent, and invalid. Any security they pretend to have in Nosker's property is in excess of its value. These claims are fraudulent and in violation of 18 U.S.C. Section 157, and are Racketeer influenced per 18 U.S.C. Section 1961(1)(D) and accordingly not compensable through this Court.

Through their handlers, they have failed to file the required "Proof of Claim" in this matter and their claims should be dismissed accordingly.

If, despite all this, the Court wishes to participate in these "judgments," it may include them at the rate of 10% for repayment up to the value of the collateral property as was provided in the previous plan.

Response at 1–2.

The Trustee's objects to confirmation of the Second Revised Plan and seeks dismissal of this case on the following grounds: the Debtor has failed to make a single payment to the Trustee since the case was filed in March of 2000; no provision is made for payment of the secured claims of GCRAA or Gilliland; the Second Revised Plan fails to provide for the cure of the arrearage on Provident's mortgage; and, the Second Revised Plan has not been proposed in good faith. The objections to confirmation filed by Provident and GCRAA are based on the Second Revised Plan's failure to provide for payment of the allowed amount of their respective secured claims. Noting that the figures Debtor has disclosed in his amended Schedules B, I and J appear to be inconsistent and erroneous, Provident also argues that there has been no showing that Debtor has the ability to fund his plan. Thus, Provident argues, the Second Revised Plan does not satisfy the feasibility requirement contained in § 1325(a)(6) of the Code.

## II. *Jurisdiction*

The Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 157 and 1334(b) and the general order of reference entered in this judicial district. This is a core proceeding. 28 U.S.C. § 157(b)(2).

## III. *Legal Analysis*

### A. *Confirmation of the Second Revised Plan*

Section 1325 of the Code sets forth the standards for confirmation of a Chapter 13 plan. The Debtor bears the burden of demonstrating that the Second Revised Plan satisfies § 1325(a)'s confirmation requirements. *See Hardin v. Caldwell (In re Caldwell)*, 895 F.2d 1123, 1126 (6th Cir. 1990); *In re Ross*, 231 B.R. 635, 638 (Bankr.S.D.Ohio 1999); *In re Erbaugh*, 199 B.R. 367, 369 (Bankr.S.D.Ohio 1996).

Section 1325(a)(1) of the Code states that a bankruptcy court shall confirm a Chapter 13 plan only if "the plan complies with the provisions of this chapter and all other provisions of this title." 11 U.S.C. § 1325(a)(1). The eligibility provisions of § 109(e) of the Code state that "[o]nly an individual with regular income ... may be a debtor under chapter 13." 11 U.S.C. § 109(e). An "individual with regular income" is defined as an "individual whose income is sufficiently stable and regular to enable such individual to make payments

under a plan under chapter 13 of this title." 11 U.S.C. § 101(30). Further, § 1322(a)(1) of the Code requires a debtor's plan to "provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the Trustee as is necessary for the execution of the plan." 11 U.S.C. § 1322(a)(1).

As explained below, the Debtor has not established that the Second Revised Plan satisfies the requirements of §§ 109(g) and 1322(a)(1). Nor has the Debtor demonstrated that all of his projected disposable income is being applied to make payments under the Second Revised Plan as mandated by § 1325(b)(1)(B) of the Code.[1] Thus, the Second Revised Plan does not satisfy § 1325(a)(1) because it does not comply "with the provisions of this chapter and the other provisions of this title." *See* 11 U.S.C. § 1325(a)(1).

Despite being directed by the September 29 Order to file complete and accurate financial information, the Debtor's amended statement of financial affairs and Schedules I and J are internally inconsistent and do not establish the amount of Debtor's monthly income. The Reply states that Debtor's income from his excavation business was $46,400 in 1999 and $41,245 in 1998. But Debtor's Schedules I and J reflect monthly income of $7,800 and monthly expenses of $2,282, leaving excess income of $5,298 per month. Question 1 on the statement of financial affairs requires the Debtor to list the gross amount and source of income from the beginning of the calendar year to the date the case was commenced. In response, the Debtor

merely states "$7,800." If the Court were to assume that Debtor's disclosure of 1999 earnings is accurate and that his earnings have remained level at approximately $46,400 per year, then it would appear that Debtor currently has gross monthly income of slightly less than $4,000. At the Hearing, however, the Debtor testified that the $7,800 figure constituted his income for the month of September, 2000. If earned consistently, monthly income of $7,800 would result in an annual gross income of $93,600. Yet, the Debtor testified that the September income was an anomaly and that in some months he made that amount of money and in some months he earned less.

The information disclosed in the Debtor's filings with the Court regarding his monthly and annual earnings is inconsistent, confusing and falls far short of establishing that the Debtor has the excess income necessary to fund the payments required by the Second Revised Plan. Further, the Debtor's testimony at the Hearing, rather than shedding light on the issue of his income level, was evasive and lacked credibility. The Debtor testified that he had no records to establish his actual or average monthly income. The Debtor also testified that, as of November 2000, he had no idea how much money he had earned so far for the year.

■ Based on the Debtor's total failure to provide credible information concerning his income—either in his filings with the Court or at the Hearing—the Court cannot determine that: (1) the Debtor is "an indi-

---

1. Section 1325(b)(1)(B) states:
   If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—
   . . . .

(B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.
11 U.S.C. § 1325(b)(1)(B).

vidual whose income is sufficiently stable and regular to enable such individual to make payments under a plan under Chapter 13," *see* 11 U.S.C. § 109(e); (2) the Debtor is providing for the submission to the Trustee of all or such portion of future income as is necessary to fund the plan, *see* 11 U.S.C. § 1322(a); or (3) all of the Debtor's disposable income is being applied to make payments under the Second Revised Plan, *see* 11 U.S.C. § 1325(b)(1)(B). Thus, the Debtor has failed to meet his burden of establishing that the Second Revised Plan "complies with this chapter [i.e., §§ 1322(a)(2) and 1325(b)(1)(B) ] and the other provisions of this title [i.e., § 109(e) ]." *See* 11 U.S.C. § 1325(a)(1); *In re Tornheim,* 239 B.R. 677, 679, 685 (Bankr.E.D.N.Y.1999) (noting that "despite this Court's repeated directions, the Debtor refused to provide any documentation regarding his financial status" and holding that "[a] debtor who does not produce credible evidence of the existence of a regular income ... does not qualify for Chapter 13 relief under 11 U.S.C. § 109(e)").

The Second Revised Plan also fails to comply with § 1325(a)(5) of the Code. Section 1325(a)(5) provides:

(a) Except as provided in subsection (b), the court shall confirm a plan if—

(5) with respect to each allowed secured claim provided for by the plan—

. . . .

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that the holder of such claim retain the lien securing such claim; and

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; or

(C) the debtor surrenders the property securing such claim to such holder;

. . . .

11 U.S.C. 1325(a)(5).

■ None of the Debtor's secured creditors—neither Provident, GCRAA nor Gilliland—has accepted the Second Revised Plan. Thus, § 1325(a)(5)(A) does not apply. Section § 1325(a)(5)(C) of the Code also is inapplicable because the Second Revised Plan does not contemplate the surrender of the Property. Nor does the Second Revised Plan comply with § 1325(a)(5)(B). The secured claims of GCRAA and Gilliland are essentially ignored. The Debtor simply takes the position that the GCRAA and Gilliland claims—which are based on valid, nonappealable state court judgments—need not be treated as secured claims under the Second Revised Plan. The Second Revised Plan states that "if the Court wishes to participate in these 'judgments,' it may include them at a rate of 10% for repayment up to the rate of the collateral property." This cryptic statement apparently indicates Debtor's intent to pay no more than 10% of the allowed secured claims held by GCRAA and Gilliland. The Second Revised Plan's proposed treatment—or more accurately, nontreatment—of the GCRAA and Gilliland secured claims violates § 1325(a)(5)(B).

■ The Second Revised Plan's proposed treatment of Provident also runs afoul of § 1325(a)(5)(B). By failing to provide for the payment of interest on Provident's secured claim, the Second Revised Plan does not meet § 1325(a)(5)(B)(ii)'s requirement that the present value of payments to a secured claim holder—here, Provident—be not less than the allowed amount of the secured creditor's claim. *See United States v. Haas (In re Haas),* 203 B.R. 573, 575 (E.D.Pa.1996). ("[A] secured creditor is ordinarily entitled to the payment of interest under

§ 1325(a)(5)(B)(ii) on its secured claim."); *In re Ehrhardt*, 240 B.R. 1, 4 (Bankr. W.D.Mo.1999) ("[I]f the Plan proposes to pay the secured claim over time, it is necessary that the Plan provide for interest at such a rate that will put the creditor into the same economic position that it would have been if it had been paid its claim immediately rather than over time."); *In re Felipe*, 229 B.R. 489, 491 (Bankr. S.D.Fla.1998) ("To insure payment of the present value as of the plan's effective date, Chapter 13 plan payments must incorporate an appropriate discount interest rate.").

■ The Second Revised Plan also fails to satisfy the feasibility requirement of § 1325(a)(6). To achieve confirmation, the debtor must be "able to make all payments under the plan and to comply with the plan." 11 U.S.C. § 1325(a)(6). *See Ross,* 231 B.R. at 639 ("[The feasibility] confirmation criteria requires debtors to establish and courts to find, considering all the circumstances, that there is a reasonable likelihood of success of plan completion, and that debtors will be able to comply with all plan terms."); *Erbaugh,* 199 B.R. at 369 ("[The feasibility] test requires the court to find that 'the debtor will be able to make all payments under the plan and to comply with the plan.' ") As discussed above, due to the Debtor's incomplete disclosures and evasive testimony the Court cannot conclude that Debtor's income exceeds his expenses by an amount sufficient to make the payments required by the Second Revised Plan. The Debtor thus has failed to meet his burden of demonstrating that the Second Revised Plan satisfies § 1325(a)(6)'s feasibility standard.

The Trustee also objects to confirmation on the ground that the Second Revised Plan has not been proposed in good faith. *See* 11 U.S.C. § 1325(a)(3). Having determined that the Second Revised Plan's non-compliance with the confirmation requirements set forth in § 1325(a)(1), (a)(5) and (a)(6) bars its confirmation, the Court need not reach the issue of good faith.

**B.** *Dismissal of the Chapter 13 Case*

■ The Trustee and Provident have requested dismissal of this Chapter 13 case. According to the Trustee and Provident, dismissal of this case is appropriate under § 1307(c) of the Code, based upon the Debtor's unreasonable delay, which has been prejudicial to creditors, *see* 11 U.S.C. § 1307(c)(1), and due to Debtor's failure to commence making plan payments as required by § 1326(a) of the Code, LBR 3015–3(e)(1) and the September 29 Order, *see* 11 U.S.C. § 1307(c)(4). The Court agrees. Although this case has been pending for nearly a year, the Debtor has yet to propose a plan that comes close to meeting the confirmation standards set forth in 11 U.S.C. § 1325. Moreover, in direct contravention of § 1326(a), LBR 3015–3(e)(1) and the September 29 Order, the Debtor has failed to make a single payment to the Trustee since the Petition Date. Therefore, cause for dismissal of this case under § 1307(c)(1) and (4) of the Code has been established by the Trustee.

■ The Trustee also asserted at the Hearing that, by intentionally failing to commence making plan payments as directed by the September 29 Order, the Debtor has willfully failed to abide by an order of the Court. This willful noncompliance with the September 29 Order, the Trustee argues, warrants imposition of the sanction contained in § 109(g) of the Code—i.e., a 180–day period of ineligibility for bankruptcy relief.

■ Section 109(g) provides:
(g) Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending

under this title at any time in the preceding 180 days if:

> (1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case; or
>
> (2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title.

11 U.S.C. § 109(g). "Mere failure to pay ..., even though payment under the plan is an order of the Court, does not cause a former debtor to be ineligible. Ineligibility under Section 109(f)(1) requires a finding of [willfulness]." *In re Patel,* 48 B.R. 418, 419 (Bankr.M.D.Ala.1985). Although the term "willful" is not defined in the Code, it has been interpreted to mean deliberate or intentional. *See In re Herrera,* 194 B.R. 178, 188–89 (Bankr.N.D.Ill. 1996) (" 'Willful' in this provision means deliberate."); *In re Ellis,* 48 B.R. 178, 179 (Bankr.E.D.N.Y.1985) ("Willful is generally used to describe conduct which is intentional, knowing and voluntary, .... A willful failure to do a required act necessitates a showing that the person, with notice of their responsibility, intentionally disregarded it or demonstrated 'plain indifference.' ") (citations omitted).

Here, Debtor chose not to make payments to the Trustee as required by the September 29 Order. Instead, at the Hearing, the Debtor produced a cashier's check in the amount of $2,874, a sum equal to two monthly payments under the Second Revised Plan. The Debtor's Reply explained why he elected to proceed in this fashion rather than comply with the September 29 Order: "Nosker's direct payment plan is appropriate as his repayment record has not been impugned and the [T]rustee's involvement is not necessary as a practical matter." Reply at 2. Further, the Debtor acknowledged at the Hearing that he understood the requirements set forth in the September 29 Order but elected to disregard the order because he felt that the Trustee's involvement in the payment process was unnecessary. The Debtor stated that, in lieu of complying with the September 29 Order by making payments to the Trustee, he instead would hold the cashier's check "in escrow" pending confirmation of the Second Revised Plan. Under these circumstances, the Debtor's noncompliance with the September 29 Order cannot be characterized as anything other than willful. *See In re Pappalardo,* 109 B.R. 622, 625 (Bankr. S.D.N.Y.1990) (" '[W]illful as used within the meaning of 11 U.S.C. § 109(g)(1) means deliberate or intentional rather than accidental or beyond the debtor's control."). Because dismissal of this case results from his willful failure to abide by the September 29 Order, under § 109(g), the Debtor will be ineligible for bankruptcy relief for a period of 180 days from the date that the dismissal order is entered.

An order denying confirmation of the Second Revised Plan, dismissing this case and barring the Debtor from filing a case under any chapter of the Code for a period of 180 days from the date of dismissal will be entered separately.

### OPINION AND ORDER DENYING MOTION FOR RECONSIDERATION

The debtor, Charles Alton Nosker (the "Debtor"), who has appeared pro se throughout this Chapter 13 case,[1] has filed

---

1. Throughout this proceeding, the Court repeatedly has informed the Debtor that his chances of obtaining confirmation of a confirmed Chapter 13 plan would be enhanced if

a motion captioned "Motion for Reconsideration to Alter or Amend Order Denying Confirmation of Second Revised Plan and Dismissing Case and Memorandum Opinion, or in the Alternative, Motion for New Hearing" (Doc. 48–1) (the "Motion"). The Motion seeks reconsideration of the Court's Order Denying Confirmation of Second Revised Plan and Dismissing Case (Doc. 47–1) (the "Order"). The Order: (1) sustained the objections to confirmation of the Debtor's Second Revised Plan (the "Revised Plan") asserted by the Chapter 13 Trustee (the "Trustee"), Provident Bank ("Provident") and the Greene County Regional Airport Authority ("GCRAA"); (2) denied confirmation of the Revised Plan; and (3) dismissed Debtor's Chapter 13 case. And, because dismissal resulted from Debtor's willful failure to abide by an order of the Court, the Order barred the Debtor's refiling of a case under any chapter of the Bankruptcy Code (the "Code") for a period of 180 days from the date of its entry.

The Motion was filed on March 12, 2001. Under LBR 9013–1(b), the deadline for filing responses to the Motion was April 4, 2001. On April 2, 2001, while the Motion was pending and before the time for filing responses had expired, the Debtor filed a notice of appeal with the Court, seeking review of the Order by the Sixth Circuit Bankruptcy Appellate Panel (the "BAP").

On April 10, 2001, the Debtor withdrew the notice of appeal. The BAP then dismissed the Debtor's appeal by order dated April 13, 2001. The parties who objected to confirmation of the Revised Plan—the Trustee, Provident and GCRAA—have not filed a response to the Motion.

▪▪▪ A motion for reconsideration, which is treated as a motion to alter or amend a judgment, is governed by Fed. R.Civ.P. 59(e).[2] *McDowell v. Dynamics Corp. of America,* 931 F.2d 380, 382 (6th Cir.1991); *Huff v. Metro. Life Ins. Co.,* 675 F.2d 119, 122 (6th Cir.1982). "A motion under Rule 59(e) is not intended to provide the parties an opportunity to relitigate previously-decided matters or present the case under new theories. Rather, such motions are intended to allow for the correction of manifest errors of fact or law, or for the presentation of newly-discovered evidence." *Ohio Sav. Bank v. Larson (In re Larson),* 103 B.R. 896, 897 (Bankr. S.D.Ohio 1989). *See also General Truck Drivers Local No. 957 v. Dayton Newspapers, Inc.,* 190 F.3d 434, 445 (6th Cir.1999) (Clay, J. dissenting), *cert. denied,* 528 U.S. 1137, 120 S.Ct. 980, 145 L.Ed.2d 931 (2000) ("Rule 59(e) motions serve a limited purpose and should be granted for one of three reasons: (1) because of an intervening change in controlling law; (2) because evidence not previously available has be-

he retained competent counsel. *See generally* Keith M. Lundin, *Chapter 13 Bankruptcy,* § 93.1 at 93–1. (3d ed. 2000) ("Even a well-meaning pro se debtor rarely can muster the instantaneous understanding of Chapter 13 necessary to deal adequately with the trustee, creditors and court."). Notwithstanding the Court's suggestion, the Debtor has elected to proceed without counsel. The Debtor has a long history of pro se litigation in federal and state courts. *See Nosker v. Parrott,* No. C–3–00–333 (S.D.Ohio July 19, 1999) (order denying motion for temporary restraining order) (Debtor appearing pro se); *Nosker v. Lennon,* 96–CA–98, 1997 WL 351777 (Ohio Ct.App.

June 27, 1997) (Debtor appearing pro se); *Nosker v. Greene County Regional Airport Auth.,* No. 96–CA–101, 1997 WL 271407 (Ohio Ct.App. May 23, 1997) (same); *Schmidt v. Nosker,* No. 94–CA–96, 1995 WL 137035 (Ohio Ct.App. March 29, 1995) (same); *Valley Asphalt Corp. v. Frame–Henson Asphalt Paving Inc.,* No. 88–CA–74, 1989 WL 35893 (Ohio Ct.App. April 10, 1989) (same); *Nosker v. Hunt, Dodge, Little,* No. 8449, 1984 WL 4859 (Ohio Ct.App. April 24, 1984) (same).

2. Fed.R.Civ.P. 59 is made applicable in bankruptcy cases by Fed.R.Bankr.P. 9023.

come available; or (3) because it is necessary to correct a clear error of law or prevent manifest injustice."); *Sault Ste. Marie Tribe of Chippewa Indians v. Engler,* 146 F.3d 367, 374 (6th Cir.1998) ("A motion under Rule 59(e) is not an opportunity to re-argue a case."); *Harley–Davidson Motor, Inc. v. Bank of New England,* 897 F.2d 611, 616 (1st Cir.1990) ("Rule 59(e) motions are aimed at *re* consideration, not initial consideration.") (emphasis in original); *Federal Deposit Ins. Corp. v. Meyer,* 781 F.2d 1260, 1268 (7th Cir.1986). ("Motions for a new trial or to alter or amend a judgment must clearly establish either a manifest error of law or fact or must present newly discovered evidence. These cannot be used to raise arguments which could, and should, have been made before the judgment issued."). The burden of demonstrating the existence of a manifest error of fact or law rests with the party seeking reconsideration. *See In re McDaniel,* 217 B.R. 348, 351 n. 5 (Bankr. N.D.Ga.1998); *In re Redman Oil Co., Inc.,* 100 B.R. 945, 948 (Bankr.S.D.Ohio 1989).

■■■ The basis of the Court's decision to deny confirmation of the Revised Plan, dismiss the Chapter 13 case, and bar the Debtor from refiling a case under any chapter of the Code for a period of 180 days following dismissal is set forth in the Memorandum Opinion (Doc. 46–1) entered contemporaneously with the Order. The Court's denial of confirmation of the Revised Plan was based on the following grounds:

(1) the Debtor's failure to establish that he is "an individual whose income is sufficiently stable and regular to enable such individual to make payments under a plan under Chapter 13," *see* 11 U.S.C. § 109(e);

(2) the Debtor's failure to provide for the submission to the Trustee of all or such portion of future income as is necessary to fund the Revised Plan, *see* 11 U.S.C. § 1322(a);

(3) the Debtor's failure to establish that all of his disposable income was being applied to make payments under the Revised Plan, *see* 11 U.S.C. § 1325(b)(1)(B);

(4) the Revised Plan's non-compliance with § 1325(a)(5) of the Code, due to:

(a) its failure to provide for the payment of interest on Provident's secured claim; and

(b) its failure to provide for payment of the secured claims of GCRAA and Rick Gilliland ("Gilliland"), which arose from final, non-appealable state court judgments against the Debtor (the "State Court Judgments"); and

(5) the Revised Plan's failure to satisfy the feasibility requirement of § 1325(a)(6) of the Code. Memorandum Opinion at 560–62.

As set forth in the Memorandum Opinion, dismissal of the Chapter 13 case was ordered under § 1307(c) based upon two grounds: (1) the Debtor's unreasonable delay, which was prejudicial to creditors, *see* 11 U.S.C. § 1307(c)(1); and (2) the Debtor's failure to commence making plan payments as required by § 1326(a) of the Code, LBR 3015–3(e)(1) and the Court's order entered on September 29, 2000 (the "September 29 Order"), *see* 11 U.S.C. § 1307(c)(4). *Id.* at 11. Finally, the Court ruled that Debtor's intentional failure to commence making plan payments as directed by the September 29 Order constituted a willful failure to abide by an order of the Court. This willful failure by the Debtor to comply with the September 29 Order warranted imposition of the sanction contained in § 109(g) of the Code—i.e., a 180–day period of ineligibility for bankruptcy relief. *Id.*

With the exception of the Debtor's contention that the Court erroneously excluded certain evidence at the two separate confirmation hearings conducted in this case,[3] which is discussed below, the grounds for reconsideration of the order advanced in the Motion are merely a rehash of arguments previously asserted by the Debtor and rejected by the Court for the reasons stated in the Memorandum Opinion. None of these arguments establishes a basis for altering or amending the Order. *See Plaskon Elec. Materials, Inc. v. Allied–Signal, Inc.,* 904 F.Supp. 644, 669 (N.D.Ohio 1995) ("Motions for reconsideration are not substitutes for appeal...."); *Database Am., Inc. v. Bellsouth Adver. & Publ'g Corp.,* 825 F.Supp. 1216, 1220 (D.N.J.1993) ("A motion for reconsideration is not a vehicle to reargue the motion or to present evidence which should have been raised before."); *G–69 v. Degnan,* 748 F.Supp. 274, 275 (D.N.J.1990) ("A party seeking reconsideration must show more than a disagreement with the Court's decision, and 'recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden.' ") (quoting *Carteret Sav. Bank v. Shushan,* 721 F.Supp. 705, 706 (D.N.J.1989)).

The only argument made by the Debtor in support of his request for reconsideration that was not previously considered and rejected in the Memorandum Opinion is that the Court erred by excluding evidence the Debtor offered in support of his attempt to challenge the validity of the State Court Judgments.[4] The Debtor contends that the Court "did not allow rebuttal testimony on Nosker's behalf. It only allowed testimony from Nosker's opponents. Nor did it allow sworn testimony of witnesses who were in the courtroom at the time and would have further established the criminal fraudulent element in at least two of the supposed creditor's[sic] 'claims.' " Motion at 1.

The contention that the Court "only allowed testimony from Nosker's opponents" is flatly wrong. The Court permitted the Debtor (and his spouse) to testify at length at the Confirmation Hearings and to respond fully to the objections to confirmation asserted by the Trustee, Provident and GCRAA. The Court, however, did limit the scope of the Debtor's testimony by not permitting the introduction of evidence that purported to establish the invalidity of the State Court Judgments.[5]

---

3. A hearing to consider confirmation of Debtor's previously filed Chapter 13 plan, which was captioned "Revised Chapter 13 Plan and Response to Provident Bank's Motion of 4–28–00 and 5–11–00 and Chapter 13 Trustee's Motion of 4–7–00 and Supplemental Memorandums [sic] of 4–11–00 and 5–12–00," was held on July 6, 2000 (the "First Hearing"). A hearing to consider confirmation of the Revised Plan was held on November 9, 2000 (the "Second Hearing"). The evidentiary rulings challenged in the Motion were made by the Court initially at the First Hearing. The Court reiterated these rulings at the Second Hearing when the Debtor again attempted to introduce the previously excluded evidence. In this Opinion and Order, the First and Second Hearings are collectively referred to as the "Confirmation Hearings."

4. The evidentiary rulings challenged by the Debtor in the Motion were not discussed in the Memorandum Opinion. The Court explained the basis for its decision to exclude the evidence offered by the Debtor on the record at the Confirmation Hearings.

5. In addition to offering his own testimony, the Debtor sought to call the Trustee as well as counsel for Provident, GCRAA and Gilliland as witnesses. For the reasons explained in this Opinion and Order, the Court determined that an attack on the State Court Judgments was improper. Thus, the Court excluded the evidence. The Court's refusal to permit the Debtor to call the Trustee and counsel for Provident as witnesses also was based on the fact that the Trustee and Provident were not parties to the actions that gave

This evidentiary ruling was premised on the Court's conclusion that an attack on the State Court Judgments, which were rendered by a court of competent jurisdiction and withstood an appellate challenge by the Debtor, would violate both settled preclusion principles[6] and the *Rooker–Feldman* doctrine.[7] The Court concludes that its evidentiary ruling was not erroneous.

Further, the Debtor offered the evidence in question for the limited purpose of attempting to establish that the secured claims held by GCRAA and Gilliland are based on invalid, unenforceable judgments.[8] The Debtor argued that, because the State Court Judgments obtained by GCRAA and Gilliland are invalid, the Revised Plan need not provide for the secured claims arising from the judgments in the manner prescribed by § 1325(a)(5) of the Code. But the Court's denial of confirmation of the Revised Plan was not based solely upon its failure to provide for the GCRAA and Gilliland secured claims in accordance with § 1325(a)(5). Denial of confirmation resulted from a number of patent deficiencies both in the Revised Plan (e.g., its failure to provide for the payment of interest on Provident's secured claim and to satisfy § 1325(a)(6)'s feasibility requirement) and the evidentiary record

rise to the State Court Judgments. Hence, neither the Trustee nor counsel for Provident had personal knowledge of facts pertaining to the Debtor's contention that the State Court Judgments are invalid.

6. The doctrines of "claim preclusion" and "issue preclusion" serve the salutary purpose of "conserving judicial and litigant resources and minimiz[ing] the possibility of inconsistent decisions." *Corzin v. Fordu (In re Fordu)*, 201 F.3d 693, 703 (6th Cir.1999). *See also Meindl v. Genesys. Pac. Techs., Inc. (In re Genesys Data Techs., Inc.)*, 204 F.3d 124, 128 (4th Cir.2000) ("[W]hen a bankruptcy court is considering the validity of a claim upon which debt is based, . . . res judicata applies as it ordinarily would.").

7. "The *Rooker/Feldman* doctrine derives its name from two cases—*District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983), which revived a doctrine of federal court jurisdiction established by *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923)." *Grendell v. Ohio Supreme Court*, 252 F.3d 828, 835 n. 1 (6th Cir.2001). "The doctrine expresses the principle that federal trial courts have only original subject matter, and not appellate, jurisdiction [and] . . . may not entertain appellate review of [or collateral attack on] a state court judgment.'" *Singleton v. Fifth Third Bank (In re Singleton)*, 230 B.R. 533, 536 (6th Cir. BAP 1999) (quoting *In re Johnson*, 210 B.R. 1004, 1006 (Bankr. W.D.Tenn.1997)).

On July 15, 1999, the Debtor brought an action in District Court under 42 U.S.C. § 1983 against, among others, counsel for Provident, GCRAA and Gilliland (the "Civil Rights Action"). In the Civil Rights Action, which challenged the validity of the State Court Judgments, the Debtor filed a motion for an order temporarily restraining the Sheriff's sale of the Debtor's residential real property (the "TRO Motion"). Relying on the *Rooker–Feldman* doctrine, Chief Judge Rice denied the TRO Motion and later dismissed the Civil Rights Action. On July 21, 1999, two days after the TRO Motion was denied and the day before the scheduled Sheriff's sale of the Debtor's residential real estate, the Debtor and his wife, Allison E. Nosker, filed a Chapter 13 case (Case No. 99–33778) with the Court. Judge Clark issued an order dismissing the joint Chapter 13 case, which was entered on September 21, 1999, after the Debtor and his spouse failed to: (1) attend the first meeting of creditors; (2) file a plan; and (3) pay the filing fee in full.

8. The proper procedural vehicle for challenging the validity of the liens held by GCRAA and Gilliland arising from the State Court Judgments is an adversary proceeding. *See* Fed.R.Bankr.P. 7001(2). Instead of filing an adversary proceeding, the Debtor improperly sought to attack the State Court Judgments and the liens arising from them at the Confirmation Hearings.

made at the Confirmation Hearings (e.g., the Debtor's failure to establish both that his income was sufficiently stable and regular to fund the Revised Plan, *see* 11 U.S.C. § 109(e); and, that all of his disposable income was being applied to make payments under the Revised Plan, *see* 11 U.S.C. § 1325(b)(1)(B)). Thus, even if the evidence in question had been admitted and the Debtor had succeeded in establishing that the State Court Judgments are invalid, the ultimate outcome here—denial of confirmation of the Revised Plan and dismissal of Debtor's Chapter 13 case—would not have changed.

In sum, the Debtor has failed to demonstrate the existence of a manifest error of fact or law warranting reconsideration of the Order. Thus, the Motion (Doc. (# 48–1)) is DENIED.

IT IS SO ORDERED.