In re MACE ELECTRONICS OF OHIO, INC., Mace Levin Associates, Inc. Debtors.

TERRA ERIE ASSOCIATES, et al., Plaintiffs,

v.

MARINE BANK, et al., Defendants.

Bankruptcy Nos. B87–2548(3), B87–2549(3).
Adv. No. B88–0084.

United States Bankruptcy Court, N.D. Ohio, E.D.

Nov. 2, 1988.

**754**

Stephen M. Bales, Ziegler, Metzger & Miller, Cleveland, Ohio, for Terra Erie Associates and Riverview Plaza Associates.

Bernard J. Bercik, McCann, Garland, Ridall & Burke, Pittsburgh, Pa., for Terra Enterprises, Inc.

Jeffrey Baddeley, Squire, Sanders & Dempsey, Cleveland, Ohio, for Marine Bank.

Michael E. Jackson, Stephen V. Cheatham, Arter & Hadden, Cleveland, Ohio, for Whirlpool.

Saul Eisen, Javitch & Eisen, Cleveland, Ohio, trustee.

Brian A. Bash, Cleveland, Ohio for trustee.

### MEMORANDUM OF OPINION AND ORDER

RANDOLPH BAXTER, Bankruptcy Judge.

Herein, Terra Erie Associates and Riverview Plaza Associates (Plaintiffs) seek an order which would equitably subordinate the secured claims of the Defendants, Marine Bank (Marine) and of Whirlpool Acceptance Corporation (Whirlpool). To resolve the matter, the parties have filed cross-motions for summary judgment, in addition to submitting their stipulations. Following a hearing and consideration of the parties' respective briefs and supporting documentation, the following constitutes the Court's findings and conclusions as required by Rule 7052, Bankr.R.:

### I.

This is a core proceeding under 28 U.S.C. § 157(b)(2), with jurisdiction further conferred under provisions of 28 U.S.C. § 1334 and General Order No. 84 of this District. On July 21, 1987, Mace Electronics of Ohio, Inc. and Mace Levin Associates, Inc. (Debtors) caused to be filed their voluntary petition seeking an order of relief under Chapter 11. Both prepetition and postpetition, the Plaintiffs served as the Debtors' lessors under separate leases of nonresidential real property (Riverview Lease and the Terra Lease, respectively). On September 21, 1987, the Riverview Lease was terminated by rejection. Similarly, on October 5, 1987, the Terra Lease was terminated by rejection. Following those rejections, Terra filed its administrative claim of $10,388.11, seeking payment for postpetition administrative rents. Riverview filed its claim of $7,532.02 for the same purpose.

The Debtors ceased business operations on November 15, 1987. On December 3, 1987, the Debtors in conjunction with Marine Bank and Whirlpool caused to be filed their joint motion for use of cash collateral. The joint motion, *inter alia*, requested authority for the use and expenditure of cash collateral for a period of twenty (20) days on an emergency basis. An order thereon was entered on December 3, 1987. On December 18, 1987, the Debtors voluntarily converted their Chapter 11 case for liquidation under Chapter 7. The Plaintiffs having failed in their efforts to collect their postpetition administrative rents, prior to conversion, this adversary proceeding ensued.

### II.

Contending that the joint motion for use of cash collateral and its corresponding order required the Defendants to pay the Plaintiffs their administrative claims totalling $17,920.24, the Plaintiffs further argue that (1) the Defendants' failure to do so conferred an unfair and unwarranted advantage upon the Defendants; (2) the Defendants engaged in inequitable conduct, and there exists an "intrinsic ethical inferiority" between the Defendants' secured claims and the Plaintiffs' unsecured claims for administrative rents. For these reasons, the Plaintiffs seek an equitable subordination of the Defendants' secured claims.

In their joint reply to the Plaintiffs' motion for summary judgment, Whirlpool and Marine categorically deny that their conduct toward the Plaintiffs comported with conduct which would give rise to equitable subordination. While not contesting the Plaintiffs' entitlement to administrative rents, the Defendants contend that the Plaintiffs should be treated in the same

manner as other postpetition lessors. That is, as Chapter 11 administrative claimants, they would be prioritized after Chapter 7 secured claimants and Chapter 7 administrative expenses. The Defendants further contend that the sole reason for the Plaintiffs' present action is to improve Plaintiffs' relative priority position in the Chapter 7 case since Plaintiffs realize that the Defendants' combined secured claims total $9.5 Million against the Debtors stated assets of $7.5 Million. This renders the Defendants as undersecured claimants, in the face of the Plaintiffs' unsecured claims from Chapter 11 administrative expenses. Finally, the Defendants argue that the Plaintiffs' failure to obtain an order for payment during the Chapter 11 case does not enhance their payment priority over other landlords who are similarly situated. Additionally, Defendants contend that the Plaintiffs have failed to satisfy the required elements for equitable subordination. Moreover, the Defendants allege that the Plaintiffs have mischaracterized the language of the joint motion for use of cash collateral and its attendant order. Specifically, they contend: (1) the language of those entries did not specify or order any amount to be paid to the Plaintiffs; (2) the language of those entries clearly subordinated Chapter 11 administrative claims to the secured amounts owed to the Defendants, Whirlpool and Marine Bank; and (3) the Plaintiffs actually are seeking to modify the last cash collateral order to obtain their payment over other unsecured claimants who are similarly situated.

The dispositive issue is whether the Plaintiffs, Terra and Riverview, have sufficiently demonstrated conduct by the Defendants which would warrant an equitable subordination of the Defendants' secured claims.

Equitable subordination is addressed under the Bankruptcy Code at § 510. In relevant part, the following is noted:

(c) Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may—

(1) Under principles of equitable subordination, subordinate· for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest; or

(2) order that any lien securing such a subordinated claim be transferred to the estate. 11 U.S.C. § 510(c).

The principles of equitable subordination were initially pronounced in the Supreme Court cases of *Taylor v. Standard Gas And Electric Co.*, 306 U.S. 307, 59 S.Ct. 543, 83 L.Ed. 669 (1939); and in *Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939). Since the enactment of the 1978 Bankruptcy Code, those principles have been codified under § 510. Although the Code addresses the doctrine of equitable subordination, the Congress deliberately left the doctrine's development to case law. *See*, 124 Cong.Rec. H 11, 095 (Sept. 28, 1978); 517, 413 (Oct. 6, 1978). One of the several cases addressing the doctrine of equitable subordination was *In re Mobile Steel*, 563 F.2d 692 (5th Cir.1977); *See also, In re Dominelli*, 820 F.2d 313 (9th Cir.1987); *In re N & D Properties, Inc.*, 799 F.2d 726, 731 (11th Cir.1986); *In re Harvest Milling Co.*, 221 F.Supp. 836 (D.Or.1963).

█ In order for a claim to be equitably subordinated, three conditions are generally required to be met:

1) the claimant must have engaged in some type of inequitable conduct;

2) the conduct must have injured creditors or conferred an unfair advantage on the claimant; and

3) subordination of the claim must not be inconsistent with the provisions of the Bankruptcy Code. *See, In re Mobile Steel, supra* at 700.

### III.

█ In the matter at bar, the Plaintiffs premise their complaint allegations for equitable subordination on their purported reliance on certain language contained in a joint motion for an emergency use of cash collateral filed by the Debtors, Whirlpool and Marine on December 3, 1987. An or-

der thereon was entered the same day that the motion was filed. An examination of the joint motion for use of cash collateral reveals that the motion was filed to obtain authority for the Debtor to "use and expend on an emergency basis cash collateral during the next twenty (20) days...." (Joint Motion, p. 1). The order attendant to the joint motion was entered on December 3, 1987, authorizing on an emergency basis for a twenty-day period, the Debtors' use of cash collateral "for the purpose of transferring, securing, appraising, and disposing of inventory...." (Order, dated Dec. 3, 1987, p. 1). The decretal paragraphs of that Order granted the Debtors authority to use the Defendants' cash collateral in the following manner:

1) The Debtors are hereby granted the authority for the continued use of the Cash Collateral during the next 20 days for the following purposes:

(a) Payment up to $187,600 for expenses relative to the wind up of Debtors' ongoing operations, including payroll and FICA through November 17, 1987, sales taxes (October, 1987) and general administrative expenses;

(b) Expenditures during the next 20 days up to $149,640 relating to the transfer, storage, securing and assembly of the inventory subject to Lender's security interests including expenditures for the items other than payroll, sales taxes and G & A set forth in Exhibit 1 attached to the aforesaid Motion; and

(c) Expenditures in an unspecified amount to carry out Debtor's obligations under layaway plans contracted since July 21, 1987 with customers. (Order, p. 5).

The subject joint motion included an attached "Exhibit 1" entitled "Proposed Interim Budget Expenses For Period Ending December 19, 1987." Among the several items listed on such proposed budget were the following:

General and Administrative ..........$ 2,000.00
Estimated amounts required to pay
  landlords of abandoned stores .......$18,000.00

The several items listed in the proposed interim budget totalled an estimated $337,-240.00. At no place in the proposed interim budget expenses is there any express or specific identification of the Plaintiffs. Further, as indicated in the decretal paragraphs of the aforementioned cash collateral order, the purposes for the 20–day authorized use were quite specific. In no provision of the enumerated purposes is there a specific addressment of administrative expenses to be paid to the Plaintiffs. The general and administrative expenses listed in the proposed interim budget only provided for $2,000.00, while the Plaintiffs' administrative claims total $17,920.24. Further, the $18,000.00 listed in the proposed interim budget, attached as Exhibit 1 to the joint motion, made no specific or exclusive mention of the Plaintiffs' claim. It simply addressed an estimated amount to be paid to landlords of abandoned stores. The number of lessors at the time of the joint motion is disputed. This is so notwithstanding the Plaintiffs' averment that theirs were the only administrative rent claims pending at the time the joint motion was negotiated (Plaintiffs' Brief at p. 6). Contrarily, the Defendants contend the Debtors had other landlords who were similarly situated as the Plaintiffs during the fifteen (15) days between the entry of the December 3, 1987 cash collateral order and the date of conversion to Chapter 7 proceedings. (Marine's Brief at p. 5).

The cash collateral order clearly provided that the Defendants' secured interests would be subordinate only to all fees and expenses of professionals allowed by the Court under § 330 of the Code. (Order, p. 7). More significantly, the Order provided that all of the Debtors' indebtedness to the Defendants would have priority under § 364(c)(1) of the Bankruptcy Code over all administrative expenses incurred in the reorganization proceedings as specified under §§ 503(b) and 507(b) of the Code. (Order, p. 2, para. 6). Additionally, the Order definitely provided that, "No costs or expenses of administration which have been or may be incurred in these proceedings, any conversion of these proceedings pursuant to section 1112 of the Bankruptcy Code—and no other priority claims are or will be prior to or on a parity with the claim of the

Lenders—and no such costs or expenses of administration shall be imposed against the Lenders, their claims—." (Order p. 9, para. 6).

The above-quoted provisions of the December 3, 1987 cash collateral order clearly reveal that the administrative claims of the Plaintiffs were to be subordinate to the Defendants' secured claims. The parties' differences in interpreting this order constitutes a substantial and material disputed fact rendering summary judgment inappropriate. The subject Order authorizes the Debtor to expend an amount of funds up to and including certain dollar limitations. It does not direct the Debtor to expend a specific amount for any particular purpose. It certainly does not direct a payment to be made to the Plaintiffs. Further, the Plaintiffs have not alleged, and the Court will not presume, that the Defendants exercised any control over the Debtors' operational activities during the reorganization proceedings.

The Defendants' conduct which the Plaintiffs contend warrants an equitable subordination of Defendants' secured claims is comprised of the following acts:

1) The language used in the joint motion, with attachment, on which Plaintiffs detrimentally relied;

2) Marine holds $300,000.00 in accounts' owned by the Debtors which were allegedly derived from Debtors' postpetition operations;

3) Authorization by the Defendants for the Debtor to use Defendants' cash collateral;

4) Debtors' failure to pay Plaintiffs' administrative rent claims preconversion.

None of the above-mentioned conduct attributed to the Defendants is tantamount to inequitable conduct or gives rise to other prerequisites which would warrant an equitable subordination. Without some conclusive demonstration that the Defendants controlled the Debtor, it is not the Defendants' conduct which should be called into question but, rather the Debtors' since the cash collateral order authorized the Debtor, and not the Defendants, to use the cash collateral.

Accordingly, the Plaintiffs' motion for summary judgment is denied and the Defendants' motion for summary judgment is granted.

IT IS SO ORDERED.