RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0343P (6th Cir.)
File Name: 03a0343p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

————————

In re: TERRY R. TALBERT and
LAHNA L. TALBERT,
*Debtors.*

————————————

TERRY R. TALBERT and
LAHNA L. TALBERT,
*Plaintiffs-Appellants,*

*v.*

CITY MORTGAGE SERVICES,
*Defendant-Appellee.*

No. 02-1845

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 01-00795—Richard A. Enslen, District Judge.

Submitted: September 19, 2003

Decided and Filed: September 24, 2003

Before: SILER, BATCHELDER, and COOK, Circuit
Judges.

————————

————————

## COUNSEL

————————

**ON BRIEF:** Marshall A. Yee, KEMPF & YEE, Lansing,
Michigan, for Appellants.

————————

## OPINION

————————

SILER, Circuit Judge. This bankruptcy appeal presents
purely a legal question that has split the bankruptcy and
federal district courts, namely, whether a debtor who has filed
for Chapter 7 bankruptcy may avoid a valueless lien under
§ 506(d) of the Bankruptcy Code, 11 U.S.C. § 506(d).
Because the Supreme Court's reasoning in *Dewsnup v. Timm*,
502 U.S. 410 (1992), applies with equal force and logic to the
issue at hand, we hold that a Chapter 7 debtor may not use
§ 506 to "strip off" an allowed junior lien where the senior
lien exceeds the fair market value of the real property in
question. Accordingly, we **AFFIRM** the judgment of the
district court.

### I.

Debtors Terry and Lahna Talbert (the "Talberts") filed an
adversary proceeding against Defendant City Mortgage
Services ("City Mortgage") to avoid City Mortgage's lien on
their residence pursuant to 11 U.S.C. § 506(d). Although
properly served with process, City Mortgage failed to file an
answer or other responsive filing in the bankruptcy court, a
strategy to which City Mortgage adhered before the district
court, and continues to employ before this court. At the
hearing for default judgment, the bankruptcy court raised *sua*

*sponte* the issue of whether, as a legal matter, § 506(d) permits the "strip off" of an allowed unsecured lien.[1]

For purposes of its analysis, the court accepted as true that at the time of the Talberts' bankruptcy filing, they owned a residence located in Lansing, Michigan, which had a fair market value of $88,000. The court also accepted that the residence was encumbered by a first mortgage in the amount of $90,633, and that City Mortgage held a junior mortgage in the amount of approximately $33,110. It was thus undisputed that City Mortgage held a "valueless" lien since the Talberts' property had a market value that was $2,633 less than the amount of the lien securing the first mortgage. The bankruptcy court concluded that § 506(d) does not permit the "strip off" of a valueless junior lien from real estate. *See Talbert v. City Mortgage Servs. (In re Talbert)*, 268 B.R. 811, 814 (Bankr. W.D. Mich. 2001). In reaching this conclusion, the court focused in large part on the claims allowance process, an analytical approach not followed by the district court, which affirmed the bankruptcy court based on the Supreme Court's statutory interpretation of § 506 as pronounced in the watershed case of *Dewsnup v. Timm.*

We have jurisdiction under 28 U.S.C. § 158(d). Of course, the order by the bankruptcy court, affirmed by the district court, that a junior valueless lien is not voidable by a debtor under 11 U.S.C. § 506(d) is a conclusion of law, which we review *de novo*. *Wesbanco Bank Barnesville v. Rafoth (In re Baker & Getty Fin. Servs. Inc.)*, 106 F.3d 1255, 1259 (6th Cir. 1997).

---

[1]The term "strip off" is used when a junior mortgage is totally unsecured, whereas the term "strip down" is used when a mortgage is partially unsecured and partially secured. *See In re Fitzmaurice*, 248 B.R. 356, 357 n.2 (Bankr. W.D. Mo. 2000) (citation omitted).

## II.

### A. *City Mortgage's Failure to File an Appellate Brief*

First, we must determine what consequences, if any, City Mortgage faces for not filing a brief in this appeal. Although not a situation we confront often, on a previous occasion, we have addressed the effects of this unhelpful and highly risky form of appellate advocacy:

An initial question presented . . . is the effect of appellee Allgeier's failure to file a brief on appeal. While Allgeier did not file a brief, his counsel was present at oral argument and offered to answer any questions the panel might have. Neither the Federal Rules of Appellate Procedure nor our local rules suggest that an appellee's failure to file a brief should be penalized by a decision in favor of the appellant. Instead, Fed. R. App. P. 31(c) provides in such a case that "the appellee will not be heard at oral argument except by permission of the court." *See, e.g., H.C. by Hewett v. Jarrard,* 786 F.2d 1080, 1083 n. 1 (11th Cir.1986). Our court rules do not address this issue. . . . While Rule 31(c) also authorizes us to dismiss the appeal where the *appellant* fails to file a brief to support his burden of persuasion, *see id.,* we believe that an appellee's failure to file a brief should normally carry with it only the oral argument sanction called for by the Rule. However, we do not address the power of the court to impose additional sanctions should it specifically order the filing of a brief and the appellee without adequate reason fails to comply.

*Allgeier v. United States*, 909 F.2d 869, 871 n.3 (6th Cir. 1990) (emphasis in original). In this appeal, City Mortgage has not flouted the authority of this court. Accordingly, pursuant to *Allgeier*, and, like the proceedings below, a decision in favor of the Talberts, or, in the alternative, the imposition of some other sanction against City Mortgage, is not compelled.

### B. *"Strip Off" in Chapter 7*

The question of whether a Chapter 7 debtor may use 11 U.S.C. § 506(d) to "strip off" a valueless junior lien from real property has divided the bankruptcy and federal district courts. *Compare Webster v. Key Bank (In re Webster)*, 287 B.R. 703 (Bankr. N.D. Ohio 2002); *Bessette v. Bank One, Mich. (In re Bessette)*, 269 B.R. 644 (Bankr. E.D. Mich. 2001); *In re Davenport*, 266 B.R. 787 (Bankr. W.D. Ky. 2001); *In re Fitzmaurice*, 248 B.R. 356 (Bankr. W.D. Mo. 2000); *Cunningham v. Homecomings Fin. Network (In re Cunningham)*, 246 B.R. 241 (Bankr. D. Md. 2000), *aff'd sub nom. Ryan v. Homecomings Fin. Network*, 253 F.3d 778 (4th Cir. 2001); *Cater v. American Gen. Fin. (In re Cater)*, 240 B.R. 420 (M.D. Ala. 1999); *In re Virello*, 236 B.R. 199 (Bankr. D.S.C. 1999); *Swiatek v. Pagliaro (In re Swiatek)*, 231 B.R. 26 (Bankr. D. Del. 1999); *Laskin v. First Nat'l Bank of Keystone (In re Laskin)*, 222 B.R. 872 (B.A.P. 9th Cir. 1998) (all finding that a debtor who has filed Chapter 7 bankruptcy may not "strip off" an allowed valueless junior lien pursuant to 11 U.S.C. § 506(d)), *with Farha v. First Am. Title Ins. (In re Farha)*, 246 B.R. 547 (Bankr. E.D. Mich. 2000); *Warthen v. Smith (In re Smith)*, 247 B.R. 191 (W.D. Va. 2000), *aff'd*, 1 Fed. Appx. 178 (4th Cir. 2001) (unpublished decision), *overruled by Ryan*, 253 F.3d at 782; *Zempel v. Household Fin. Corp. (In re Zempel)*, 244 B.R. 625 (Bankr. W.D. Ky. 1999); *Yi v. Citibank (Md.), N.A. (In re Yi)*, 219 B.R. 394 (E.D. Va. 1998), *overruled by Ryan*, 253 F.3d at 782; *Howard v. National Westminister Bank, U.S.A. (In re Howard)*, 184 B.R. 644 (Bankr. E.D.N.Y. 1995) (all finding that notwithstanding the Supreme Court's decision in *Dewsnup*, a Chapter 7 debtor may "strip off" an allowed secured claim if there is no value in the collateral to cover any part of the subject lien). The Fourth Circuit is the only federal appellate court to discuss this debate, and it has sided with those courts that hold that § 506 does not permit the "stripping off" of liens in Chapter 7 proceedings. *See Ryan*, 253 F.3d at 783 ("[W]e hold that an allowed unsecured consensual lien may not be stripped off in a Chapter 7

proceeding pursuant to the provisions of 11 U.S.C. §§ 506(a) and (d)."). We agree with the Fourth Circuit.

As did the debtors in *Ryan*, the Talberts argue that the secured status of a claim is determined by the security-reducing provision of § 506(a),[2] and that pursuant to this provision, their junior lien is completely unsecured, and, thus, according to § 506(d),[3] may be "stripped off."[4] *See Ryan*, 253 F.3d at 781. A similar argument was rejected by the Supreme Court in the analogous context of a debtor's attempt to "strip down" an under-collateralized creditor's lien in a Chapter 7 case. In *Dewsnup*, the debtors owned farmland encumbered by deed of trust securing a debt of $120,000. The farmland was valued at approximately $39,000. This arrangement left an unsecured deficiency of approximately $81,000, which the debtors sought to avoid pursuant to § 506(d). The lower courts would not grant this relief, and the Supreme Court affirmed.

---

[2] Section 506(a) provides in relevant part:
An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim.
11 U.S.C. § 506(a).

[3] Section 506(d) provides in pertinent part that "to the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void." 11 U.S.C. § 506(d).

[4] In the Talberts own words, "[p]ursuant to the definition of a secured claim under 11 U.S.C. § 506(a), a creditor only has a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property." They continue, "[i]n the case at bar, because of Appellee's default, it is undisputed that the amount of the first mortgage exceeds the value of Appellant's residence. It therefore cannot be gainsaid that the Appellee does not have a secured claim."

In its analysis, the Court laid out in detail the different readings that could be given to the thorny statutory interpretation question presented by the perceived interplay of §§ 506(a) and 506(d). *See Dewsnup*, 502 U.S. at 414-16. One interpretation, which was urged by the debtors, was that "§§ 506(a) and 506(d) are complementary and to be read together." *Id.* at 414. According to this argument, "[b]ecause, under § 506(a), a claim is secured only to the extent of the judicially determined value of the real property on which the lien is fixed, a debtor can void a lien on the property pursuant to § 506(d) to the extent the claim is no longer secured and thus is not 'an allowed secured claim.'" *Id.* Although not without merit, *see id.* at 420-36 (Scalia, J., dissenting) (filing a sharp dissent criticizing the majority for brushing aside the plain language of § 506 and employing an unorthodox method of statutory interpretation), this argument was rejected in favor of an analysis advanced by the creditors, and joined by the United States as *amicus curiae*, namely, that the words "'allowed secured claim' in § 506(d) need not be read as an indivisible term of art defined by reference to § 506(a), which by its terms is not a definitional provision." *Id.* at 415.

Under this construction, "allowed secured claim" "should be read term-by-term to refer to any claim that is, first, allowed,[5] and, second, secured." *Id.* (footnote added). The Court continued, "[b]ecause there is no question that the claim at issue here has been 'allowed' pursuant to § 502 of the Code and is secured by a lien with recourse to the underlying collateral, it does not come within the scope of § 506(d), which voids only liens corresponding to claims that have *not* been allowed and secured." *Id.* (emphasis in

---

[5]A claim or interest is deemed "allowed" if proof thereof is timely filed pursuant to Code § 501, and (1) no objection is made by a party in interest, or (2) the bankruptcy court, after notice and a hearing, determines the validity of the claim, thereby overruling the objection of a party in interest. 11 U.S.C. § 502.

original). This reading, the Court explained, "gives the provision the simple and sensible function of voiding a lien whenever a claim secured by the lien itself has not been allowed." *Id.* at 415-16. Thus, although limited to the facts of the case, the Court's holding was quite clear: "[w]e hold that § 506(d) does not allow petitioner to 'strip down' respondent's lien, because respondents' claim is secured by a lien and has been fully allowed pursuant to § 502." *Id.* at 417.

Three considerations constituted the analytical underpinnings of the Court's holding, namely, that: (1) any increase in the value of the property from the date of the judicially determined valuation to the time of the foreclosure sale should accrue to the creditor; (2) the mortgagor and mortgagee bargained that a consensual lien would remain with the property until foreclosure; and (3) liens on real property survive bankruptcy unaffected. *Id.* at 417-18. In the Court's own words

> The practical effect of petitioner's argument is to freeze the creditor's secured interest at the judicially determined valuation. By this approach, the creditor would lose the benefit of any increase in the value of the property by the time of the foreclosure sale. The increase would accrue to the benefit of the debtor, a result some of the parties describe as a "windfall."

> We think . . . that the creditor's lien stays with the real property until the foreclosure. That is what was bargained for by the mortgagor and the mortgagee. The voidness language sensibly applies only to the security aspect of the lien and then only to the real deficiency in the security. Any increase over the judicially determined valuation during bankruptcy rightly accrues to the benefit of the creditor, not to the benefit of the debtor and not to the benefit of other unsecured creditors whose claims have been allowed and who had nothing to do with the mortgagor-mortgagee bargain. . . .

This result appears to have been clearly established before the passage of the 1978 Act. Under the Bankruptcy Act of 1898, a lien on real property passed through bankruptcy unaffected. This Court recently acknowledged that this was so. See *Farrey v. Sanderfoot*, 500 U.S. 291, 297, 111 S.Ct. 1825, 1829, 114 L.Ed.2d 337 (1991) ("Ordinarily, liens and other secured interests survive bankruptcy"); *Johnson v. Home State Bank*, 501 U.S. 78, 84, 111 S.Ct. 2150, 2154, 115 L.Ed.2d 66 (1991) ("Rather, a bankruptcy discharge extinguishes only one mode of enforcing a claim-- namely, an action against the debtor *in personam*--while leaving intact another--namely, an action against the debtor *in rem*"). . . .

Congress must have enacted the Code with a full understanding of this practice. See H.R.Rep. No. 95-595, p. 357 (1977), U.S.Code Cong. & Admin. News 1978, pp. 5787, 6313 ("Subsection (d) permits liens to pass through the bankruptcy case unaffected").

When Congress amends the bankruptcy laws, it does not write "on a clean slate." See *Emil v. Hanley*, 318 U.S. 515, 521, 63 S.Ct. 687, 690-691, 87 L.Ed. 954 (1943). . . . [T]o attribute to Congress the intention to grant a debtor the broad new remedy against allowed claims to the extent that they become "unsecured" for purposes of § 506(a) without the new remedy's being mentioned somewhere in the Code itself or in the annals of Congress is not plausible, in our view, and is contrary to basic bankruptcy principles.

*Id.* at 417-20.

The Supreme Court's reasoning for not permitting "strip downs" in the Chapter 7 context applies with equal validity to a debtor's attempt to effectuate a Chapter 7 "strip off." *See Ryan*, 253 F.3d at 782 ("[W]e discern no principled distinction to be made between the case *sub judice* and that

decided in *Dewsnup*. The Court's reasoning in *Dewsnup* is equally relevant and convincing in a case like ours where a debtor attempts to strip off, rather than . . . strip down, an approved but unsecured lien."); *In re Webster*, 287 B.R. at 708 ("Contrary to the *Yi* court's reasoning, . . . [the 'strip-down' versus 'strip-off' distinction] is a distinction without a difference according to the majority of courts post-*Dewsnup*. The analysis does not change depending on the available equity in the collateral to which the lien attaches."); *In re Davenport*, 266 B.R. at 790 ("We agree with the Fourth Circuit that *Dewsnup's* reasoning is equally applicable in a case where a debtor attempts to strip off a wholly unsecured consensual mortgage."); *In re Cater*, 240 B.R. at 423 ("Although the lien at issue in *Dewsnup* was secured by at least some equity in the debtor's property, that factual distinction is not relevant. What is relevant is the Supreme Court's construction of § 506(d)."); *In re Virello*, 236 B.R. at 205 ("This Court . . . is of the opinion that for *Dewsnup* to have meaning, it must be applied to instances of 'strip off' of liens as much as it does to the 'strip down' of liens, the difference being primarily one of degree."); *In re Swiatek*, 231 B.R. at 29-30 ("Although in *Dewsnup* the claim was undersecured, not totally unsecured, we think the same result obtains under the *Dewsnup* rationale when the claim is completely unsecured in a chapter 7 and no objection to the claim has been filed and sustained."). In fact, one court has gone so far as to describe this conclusion as "flawless." *In re Davenport*, 266 B.R. at 790.

As in the case of a "strip down," to permit a "strip off" would mark a departure from the pre-Code rule that real property liens emerge from bankruptcy unaffected. Also, as in the case of a "strip down," a "strip off" would rob the mortgagee of the bargain it struck with the mortgagor, i.e., that the consensual lien would remain with the property until foreclosure. In fact, in *Dewsnup*, the Court was persuaded by the creditors' argument that "'the fresh start' policy cannot justify an impairment of respondents' property rights, for the fresh start does not extend to an *in rem* claim against property

but is limited to a discharge of personal liability." 502 U.S. at 416. Finally, as was true in the context of "strip downs," Chapter 7 "strip offs" also carry the risk of a "windfall" to the debtors should the value of the encumbered property increase by the time of the foreclosure sale. As one court observed, "[w]ho knows what the real estate market will be tomorrow? By the time of sale in the future, a piece of real estate may have increased in value to cover a second-mortgage lien not covered by the property's value today." *In re Cater*, 240 B.R. at 424; *see also Ryan*, 253 F.3d at 783 ("[W]e are acutely aware that in the volatile, modern real estate market, substantial price variations occur with weekly or monthly regularities.").

It is true that the Court's opinion has not escaped scholarly criticism, *see Cunningham*, 246 B.R. at 246 (compiling law review articles that have criticized the *Dewsnup* decision), and that some courts have been unwilling to extend *Dewsnup* to its logical conclusion, *see, e.g.*, *In re Yi*, 219 B.R. at 397; *In re Howard*, 184 B.R. at 646. However, notwithstanding the dissatisfaction of some, we are not at liberty to ignore the Supreme Court's reasoning, which Congress has made no apparent attempt to modify or correct through legislative action. *See Virello*, 236 B.R. at 204-05 (The "Supreme Court has interpreted the statute . . . and Congress has made no apparent attempt to correct that interpretation or clarify the statute. Under the doctrine of stare decisis, this Court is constrained to follow . . . *Dewsnup*. [To do otherwise] . . . would effectively render the Supreme Court's reasoning in *Dewsnup* meaningless.").

In the instant case, the Talberts do not challenge that City Mortgage's claim is allowed pursuant to § 502. Also, regardless of the fact that the current value of the real property is insufficient to recover City Mortgage's junior lien, the claim is nonetheless "secured in the ordinary sense, that is, . . . [it] is backed up by a security interest in property, whether or not the value of the property suffices to cover the claim." *Cater*, 240 B.R. at 422. As *Dewsnup* teaches, that is

all that is required; the Talberts may not utilize § 506(a) and (d) to "strip off" City Mortgage's lien. *See Dewsnup*, 502 U.S. at 415 ("Because there is no question that the claim at issue here has been 'allowed' pursuant to § 502 of the Code and is secured by a lien with recourse to the underlying collateral, it does not come within the scope of § 506(d), which voids only liens corresponding to claims that have not been allowed and secured.") (emphasis removed); *see also Cater*, 240 B.R. at 423 ("[B]ecause [the creditor's] claim is allowed under § 502 and is secured by a valid lien, the same result obtains. The fact that the value of the property is insufficient to cover the debt does not warrant a different result.").

"Section 506 was intended to facilitate valuation and disposition of property in the reorganization chapters of the Code, not to confer an additional avoiding power on a Chapter 7 debtor." *Ryan* 253 F.3d at 783 (quoting *Laskin*, 222 B.R. at 876). When a debtor proceeds under Chapter 7, creditors are "entitled to their lien position until foreclosure or other permissible final disposition is had." *Id.* Thus, we conclude that a Chapter 7 debtor may not use 11 U.S.C. § 506 to "strip off" an allowed junior lien where the senior lien exceeds the fair market value of the real property.[6]

---

[6] The bankruptcy court reached this same conclusion, although by different reasoning. According to the bankruptcy court, 11 U.S.C. § 506 is meaningless in Chapter 7 proceedings unless the debtor is redeeming property and needs § 506(d) to avoid any residual lien the creditor might claim in the property once the allowed secured claim has been paid. Because the Talberts were not redeeming the property, the court reasoned that they could not use § 506(d) to "strip off" City Mortgage's lien on the property. The bankruptcy court noted that § 506(d) is needed in reorganization proceedings to classify secured claims as allowed or disallowed in order to determine who gets paid. According to the court, however, there is no need for such a determination in a Chapter 7 proceeding because the trustee's job does not include making distributions to holders of secured claims; a trustee's job in a Chapter 7 proceeding is to distribute property of the estate, defined as the legal or equitable interests of the debtor in the property. 11 U.S.C. § 541. From this

**AFFIRMED.**

---

definition, the bankruptcy court found that secured claims do not qualify as property of the estate, thus avoiding the need to classify the claims as allowed or disallowed.

After reviewing this question of law *de novo,* we agree with the district court that the more prudent analytical approach to resolving the "strip-off" question presented in this matter is to affirm on the basis of the statutory interpretation analysis contained in *Dewsnup*–and on that basis only.  We thus express no opinion on the bankruptcy court's analysis.