ELECTRONIC CITATION:  2008 FED App. 0008P (6th Cir.)
File Name:  08b0008p.06

**BANKRUPTCY APPELLATE PANEL OF THE SIXTH CIRCUIT**

| | |
|---|---|
| In re:   J & M SALUPO DEVELOPMENT CO., | ) |
| | ) |
| Debtor. | ) |
| _____ | ) |
| | ) |
| PAUL T. AND NANCY HAMERLY, | ) |
| | ) |
| Plaintiffs-Appellants, | ) |
| | ) |
| | ) |
| v. | )   No. 07-8026 |
| | ) |
| FIFTH THIRD MORTGAGE COMPANY, | ) |
| | ) |
| Defendant-Appellee. | ) |
| | ) |
| _____ | ) |

Appeal from the United States Bankruptcy Court
for the Northern District of Ohio, Eastern Division, Cleveland.
Bankruptcy Case No. 06-11373; Adversary Proceeding No. 06-01555.

Argued:  February 5, 2008

Decided and Filed:  April 18, 2008

Before: FULTON, RHODES, and SCOTT, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ARGUED:** Jeffrey M. Levinson, MARGULIES & LEVINSON, Pepper Pike, Ohio, for Appellants. William B. Fecher, Cincinnati, Ohio, for Appellee. **ON BRIEF:**  Jeffrey M. Levinson, Scott H. Scharf, MARGULIES & LEVINSON, Pepper Pike, Ohio, for Appellants.  William B. Fecher, Cincinnati, Ohio, Patricia L. Hill, Hannah W. Hutman, STATMAN, HARRIS & EYRICH, Dayton, Ohio, for Appellee.

---

**OPINION**

---

THOMAS H. FULTON, Bankruptcy Appellate Panel Judge. Paul T. and Nancy Hamerly ("Appellants") appeal the bankruptcy court's grant of a judgment on the pleadings pursuant to Federal Rule of Bankruptcy Procedure 7012(c) in favor of Fifth Third Mortgage Company ("Appellee") and denial of Appellants' motion for reconsideration of that judgment, which held that Appellants could not prove any facts entitling them to obtain clear title to certain real property or warranting equitable subordination of Appellee's mortgage against such property. Appellee had extended a construction loan to J & M Salupo Development Co. ("Debtor") and recorded a mortgage against the property. Appellants subsequently had executed a purchase agreement with Debtor for the construction of a new home on the property, paid Debtor $140,000.00 in installment payments on the contract, and took possession of the home prior to closing.

## I. ISSUES ON APPEAL

A. Did the bankruptcy court err in finding that Appellants could prove "no set of facts" that would support a judgment in their favor?

B. Did the bankruptcy court err in denying Appellants' motion for reconsideration?

## II. JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit ("BAP") has jurisdiction to decide this appeal. The United States District Court for the Northern District of Ohio has authorized appeals to the BAP. A final order of a bankruptcy court may be appealed by right under 28 U.S.C. §158(a)(1). For purposes of appeal, an order is final if it "'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497, (1989) (citations omitted). An order denying a motion for reconsideration is a final order. *In re Wellman*, 337 B.R. 729, 2006 WL 189985 (B.A.P. 6th Cir. January 26, 2006) (unpublished table decision). An order granting judgment on the pleadings is a final order.

The standard of review for dismissal of a case pursuant to Fed. R. Civ. Pro. 12(c) is the same as for a civil action pursuant to Federal Rule of Civil Procedure 12(b)(6). It is a legal conclusion requiring de novo review. *Hughes v. Sanders*, 469 F.3d 475 (6th Cir. 2006). "De novo review requires the Panel to review questions of law independent of the bankruptcy court's determination." *First Union Mortgage Corp. v. Eubanks (In re Eubanks)*, 219 B.R. 468, 469 (B.A.P. 6th Cir. 1998) (citation omitted).

> The denial of a Rule 59(e) motion for reconsideration is reviewed for abuse of discretion. "'Under this standard [of review], the district court's decision and decision-making process need only be reasonable.'" The granting of a Rule 59(e) motion "is an extraordinary remedy and should be used sparingly." This is because a motion pursuant to Rule 59(e) "serve[s] the narrow purpose of allowing a party 'to correct manifest errors of law or fact or to present newly discovered evidence.'"

*Pequeno v. Schmidt (In re Pequeno)*, 240 Fed. Appx. 634, 636 (5th Cir. 2007) (internal citations and footnotes omitted). *See also Hansen v. Moore (In re Hansen)*, 368 B.R. 868 (B.A.P. 9th Cir. 2007). Likewise, motions for relief from judgment pursuant to Rule 60(b) and denial of a motion for new trial are reviewed for abuse of discretion. *Geberegeorgis v. Gammarino* (*In re Geberegeorgis*), 310 B.R. 61 (B.A.P. 6th Cir. 2004).

## III. FACTS

Debtor obtained title to the real estate in question on or about June 28, 2000. Debtor obtained a construction loan for $703,700.00 from Appellee and granted Appellee a mortgage on the property to secure the loan. The mortgage was duly recorded on September 27, 2001.

On January 10, 2002, Debtor executed a new construction purchase agreement for the sale of the real property and a residence to Appellants for the purchase price of $575,000.00. The purchase price was to be paid in installments at certain stages in the construction of the residence. Prior to Debtor's bankruptcy petition, Appellants made installment payments to Debtor totaling $140,000.00. Appellants also assert that they made additional payments directly to subcontractors which were to count against the purchase price. In June 2003, Appellants and Debtor agreed to reduce the purchase price to $570,565.98. The closing of the purchase agreement was scheduled to occur on June 13 or June 15, 2003. Pursuant to the purchase agreement, Appellants took possession of the property on June 13, 2003, prior to closing. Appellants have continued to occupy the dwelling

since that time, although to date, no closing has occurred. It is undisputed that title to the property remains in Debtor's name, with Appellee holding a mortgage against the property.

On April 19, 2006, Debtor filed a voluntary chapter 7 bankruptcy petition. On June 23, 2006, Appellee filed a motion for relief from the automatic stay so that it could foreclose its lien against the real property. On July 11, 2006, Appellants filed a response to the motion for relief from stay and initiated the present adversary proceeding to determine their rights in the property. Appellee filed a motion for judgment on the pleadings on August 10, 2006. On December 22, 2006, the bankruptcy court granted Appellee's motion, finding that Appellants were not entitled to delivery of title to the property free and clear of liens and encumbrances and that they also were not entitled to equitable subordination of Appellee's lien. On January 2, 2007, Appellants filed a motion for reconsideration. On May 1, 2007, the bankruptcy court denied the motion for reconsideration. Appellants then filed this timely appeal.

## IV.    DISCUSSION

### A.  Motion for Judgment on the Pleadings

Federal Rule of Civil Procedure 12(c), as incorporated in Rule 7012 of the Federal Rules of Bankruptcy Procedure, provides:

> After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Fed. R. Civ. P. 12(c) & (d); Fed. R. Bankr. P. 7012. As noted in *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 312-13 F.3d 305, 313 (5th Cir. 2002) (citations omitted):

> "A motion brought pursuant to Fed.R.Civ.P. 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." . . . "[T]he central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief." . . .
>
> "Pleadings should be construed liberally, and judgment on the pleadings is appropriate only if there are no disputed issues of fact and only questions of law remain." . . . "In analyzing the complaint, we will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." . . . We will not, however, "accept as true conclusory allegations or unwarranted deductions of fact."

. . . "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim. Thus, the court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint."

In granting Appellee's motion for judgment on the pleadings, the bankruptcy court found that Appellants had failed to plead and/or could not possibly prove any set of facts that would entitle them to the relief requested–either transfer of title to the property in question free and clear of encumbrances under 11 U.S.C. § 365(i)(2)(B) or subordination of Appellee's mortgage on the property under 11 U.S.C. § 510(c).

<u>1. Relief Under 11 U.S.C. § 365(i)(2)(B)</u>

11 U.S.C. § 365(i) provides:

(1) If the trustee rejects an executory contract of the debtor for the sale of real property or for the sale of a timeshare interest under a timeshare plan, under which the purchaser is in possession, such purchaser may treat such contract as terminated, or, in the alternative, may remain in possession of such real property or timeshare interest.
(2) If such purchaser remains in possession–
    (A) such purchaser shall continue to make all payments due under such contract, but may, offset against such payments any damages occurring after the date of the rejection of such contract caused by the nonperformance of any obligation of the debtor after such date, but such purchaser does not have any rights against the estate on account of any damages arising after such date from such rejection, other than such offset; and
    (B) the trustee shall deliver title to such purchaser in accordance with the provisions of such contract, but is relieved of all other obligations to perform under such contract.

Appellants argue that 11 U.S.C. § 365(i)(2)(B) requires the trustee to deliver title to them according to the purchase agreement and that the purchase agreement expressly requires that title be delivered free and clear of all liens and encumbrances. Appellants assert that by discounting Appellants' allegation of the same in their complaint, the bankruptcy court committed reversible error.

The Panel reviews the bankruptcy court's determination on a de novo basis. The Panel finds that it makes no difference under the existing facts and applicable law whether or not the purchase agreement provided for delivery of title free and clear of liens and encumbrances. In either case, Appellants would not be entitled to transfer of the property to them by the trustee free and clear of liens and encumbrances. First, the Panel notes that the trustee in this case has abandoned the real

property in question. *See In re Eagle*, 51 B.R. 959 (Bankr. N.D. Ohio 1985) (filing of no asset report is tantamount to abandonment of the property by the bankruptcy trustee). The trustee, therefore, no longer has *any* title to deliver to Appellants under 11 U.S.C. § 365(i)(2)(B).[1]

Moreover, the Panel agrees with the bankruptcy court that 11 U.S.C. § 365(i)(2)(B) merely places a duty upon the trustee to transfer to the purchaser such title as the trustee has in the property. *See In re Delaney*, No. 02-12083, 2003 WL 23096937, at *4 (Bankr. D. Mass. Dec. 29, 2003). Unlike other sections of the Bankruptcy Code, such as 11 U.S.C. § 363, 11 U.S.C. § 365(i)(2)(B) contains no express grant of power to the trustee to eliminate other interests in the property. And, in stark contrast to 11 U.S.C. § 363(b), there is no requirement under 11 U.S.C. § 365(i)(2)(B) that creditors holding liens against the property be accorded notice and opportunity for hearing regarding the stripping of their liens from the property.[2]

Although 11 U.S.C. § 365(i)(2)(B) requires a trustee to deliver title "in accordance with the provisions of such contract," the phrase must at most refer to the consideration to be paid by the purchaser because 11 U.S.C. § 365(i)(2)(B) also expressly relieves the trustee from "all other obligations to perform under such contract." 11 U.S.C. § 365(i)(2)(B) must be read in conjunction with the immediately preceding subsection of 11 U.S.C. § 365(i), 11 U.S.C. § 365(i)(2)(A). This subsection requires the purchaser to make the required payment(s) under the purchase contract and

---

[1] 11 U.S.C. § 365(i) must be interpreted consistently with 11 U.S.C. § 554. *See Castro v. U.S.*, 310 F.3d 900, 902 (6th Cir. 2002) (noting that basic rule of statutory construction is to read a statutory provision in a manner consistent with the statute's other provisions). The Panel believes that the best way to read 11 U.S.C. § 365(i) consistently with 11 U.S.C. § 554 is to interpret the former as applying only where the trustee elects not to abandon the property–that is, where the trustee anticipates a return of value to the estate after selling the property under the contract and satisfying all outstanding liens and encumbrances and the debtor's claimed homestead exemption. Thus, where the trustee elects to retain and sell property that is subject to a purchase contract, the trustee *would* be obligated to give the buyer under that purchase contract the option to purchase the property.

[2] Therefore, the dissent's expression of concern for the purchaser's more tenuous "property rights" takes on the bittersweet flavor of irony. In this regard, the Panel takes issue with the dissent's "economic" analysis of the effect on secured lenders of adopting the dissent's interpretation of 11 U.S.C. § 365(i)(2)(B). Simply stated, the dissent ignores the fact that if the Panel were to adopt the dissent's interpretation, secured creditors would be deprived of a fundamental protection in the foreclosure context–the ability to credit bid at the sale and take the property into inventory. Such a protection allows the creditor to determine at auction, based on its assessment of current market conditions and its prediction of future market conditions, whether to accept the current cash value of the property or to hold the property in anticipation of future appreciation in value. Indeed, secured creditors are accorded this protection even in the context of a sale under 11 U.S.C. §363. The Panel believes that if Congress intended to deprive secured creditors of such a vital protection, it would have done so in a manner much more explicit than as imagined by the dissent. The United States Supreme Court and the Sixth Circuit Court of Appeals have on several occasions expressly recognized Congress' strong preference that liens pass through bankruptcy unaffected and declined to read "lien stripping" into the Bankruptcy Code. *See Dewsnup v. Timm*, 502 U.S. 410, 112 S. Ct. 773 (1992); *Talbert v. City Mortgage Services (In re Talbert)*, 344 F.3d 555 (6th Cir. 2003).

gives, but limits the purchaser to, a right of setoff against the purchase price for damages occasioned by "nonperformance of any obligation of the debtor" after the date or rejection, which presumably includes damages for failure to transfer free and clear title. Thus, 11 U.S.C. § 365(i)(2)(A) and 11 U.S.C. § 365(i)(2)(B) *read together* set forth a scheme by which the putative purchaser may obtain such title as the trustee has in the property upon payment of the stated consideration less some amount for damages incurred as a result of incomplete performance of the purchase contract.[3]

In light of the foregoing, even if Appellants could have proved that the purchase agreement provided for transfer to them free and clear of liens and encumbrances, the trustee would not have been under a duty to transfer the property to Appellants free and clear of all liens and encumbrances. The Panel concludes that the bankruptcy court's granting of judgment on the pleadings in favor of Appellees on this ground did not constitute reversible error.

### 2. Equitable Subordination

The legal standard for establishing equitable subordination was originally set forth in *Benjamin v. Diamond (In re Mobile Steel Co.*, 563 F.2d 692, 699-700 (5th Cir. 1977). Most courts have uniformly followed and applied the *Mobile Steel* test, requiring the following three conditions to be shown by a preponderance of the evidence in order to justify equitable subordination:

1. The claimant must have engaged in some type of inequitable conduct;

2. The misconduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant; and

3. Equitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy [Code].

---

[3] In asserting its ostensibly "plain" reading of 11 U.S.C. § 365(i)(2)(B), the dissent declines to read that subsection in context with the other subsections of 11 U.S.C. § 365(i) or other crucial provisions of the Bankruptcy Code, such as 11 U.S.C. § 554. Moreover, the dissent's reading of 11 U.S.C. § 365(i)(2)(B) is not as "plain" as the dissent would have this Panel believe. The dissent in essence asks the Panel to read "the trustee shall deliver title to such purchaser in accordance with the provisions of such contract" as if it actually says "the trustee shall deliver title to such purchaser in accordance with the *title* provisions of such contract." Obviously, real estate purchase contracts have numerous provisions beyond title provisions. The Panel can only surmise that the dissent focuses on the title provisions because of the phrase "the trustee shall deliver title." But there is absolutely no indication that Congress' use of the word "title" in that phrase was meant to modify the later appearing phrase "in accordance with the provisions of such contract." A much more plausible explanation exists. Congress simply used the phrase "the trustee shall deliver title" because that is how transfers of real property are commonly described. The real property is not itself physically handed off from trustee to purchaser, not even a twig, clod or key, so Congress logically did not say something like "the trustee shall deliver the real property."

*Matter of Mobile Steel Co.*, 563 F.2d 692, 699-700 (5th Cir. 1977). *See Terra Erie Assocs. v. Maine Bank (In re Mace Elec. of Ohio, Inc.*), 92 B.R. 753, 755 (Bankr. N.D. Ohio 1988); *In re Medical Equities, Inc.*, 83 B.R. 954, 961-62 (Bankr. S.D. Ohio 1987). How courts apply the *Mobile Steel* test also depends on whether the creditor is an insider or a non-insider.

> The primary distinctions between subordinating the claims of insiders versus those of non-insiders lie in the severity of the misconduct required to be shown, and the degree to which the court will scrutinize the claimant's actions toward the debtor or its creditors. Where the claimant is a non-insider, egregious conduct must be proven with particularity. It is insufficient for the objectant in such cases merely to establish sharp dealing; rather, he must prove that the claimant is guilty of gross misconduct tantamount to 'fraud, overreaching or spoliation to the detriment of others.'

*First Nat'l Bank of Barnesville v. Rafoth* (*In re Baker & Getty Fin. Servs. Inc.*), 974 F.2d 712, 718 (6th Cir. 1992). It is undisputed that Appellee is a non-insider.

Because Appellee is not an insider, Appellants would have been required to prove egregious conduct by Appellee to establish that equitable subordination is appropriate. Upon review of Appellants' complaint, the Panel finds no factual allegations that, if true, would amount to "gross misconduct tantamount to 'fraud, overreaching or spoliation to the detriment of others.'" Therefore, the bankruptcy court's judgment on the pleadings in favor of Appellee on this ground was appropriate.


B.  Motion for Reconsideration/New Trial

Appellants filed a motion for reconsideration, or in the alternative for a new trial. It is not clear if they were relying on Rule 59(e) or Rule 60(b). Courts generally treat a motion for reconsideration as a motion to alter or amend the judgment pursuant to Federal Rule of Civil Procedure 59(e). *Abraham v. Anguilar (In re Aguilar)*, 861 F.2d 873 (5th Cir. 1988). Bankruptcy Rule 9023 makes Rule 59 of the Federal Rules of Civil Procedure generally applicable in bankruptcy cases.

The grant or denial of a Rule 59(e) motion is within the informed discretion of the court. *Huff v. Metropolitan Life Ins. Co.*, 675 F.2d 119, 122 (6th Cir. 1982). Moreover, such a motion is an "extraordinary remedy and should be granted sparingly because of the interests in finality and conservation of scarce judicial resources." *American Textile Mfrs. Institute, Inc. v. The Limited, Inc.*, 179 F.R.D. 541, 547 (S.D. Ohio 1997). A court may reconsider a previous judgment: (1) to

accommodate an intervening change in controlling law; (2) to account for newly discovered evidence; (3) to correct a clear error of law; or (4) to prevent manifest injustice. *See GenCorp, Inc. v. American Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999). "A motion under Rule 59(e) is not intended to provide the parties an opportunity to relitigate previously-decided matters or present the case under new theories. Rather, such motions are intended to allow for the correction of manifest errors of fact or law, or for the presentation of newly-discovered evidence." *In re Nosker*, 267 B.R. 555, 564 (Bankr. S.D. Ohio 2001). "The burden of demonstrating the existence of a manifest error of fact or law rests with the party seeking reconsideration." *Id.* at 565.

The Panel reviews the bankruptcy court's denial of Appellant's motion for reconsideration or a new trial for abuse of discretion. Here, the Panel finds that the bankruptcy court's denial was in fact reasonable. For the most part, Appellants' motion reasserted arguments previously rejected by the bankruptcy court. Typically a motion for reconsideration that simply restates the same arguments will be denied. *Sault Ste. Marie Tribe of Chippewa Indians v. Engler,* 146 F.3d 367, 374 (6th Cir. 1998) ("A motion under Rule 59(e) is not an opportunity to re-argue a case.").

Appellants did try to assert "newly-discovered evidence" in the form of an agreement titled "Conditions Agreement," purportedly intended to be attached to the purchase agreement and allegedly providing for transfer of the property free and clear of liens and encumbrances. The Panel concludes that it was not an abuse of discretion for the bankruptcy court to reject the Conditions Agreement. First, the bankruptcy court reasonably concluded that the Conditions Agreement was not newly discovered. Second, the bankruptcy court largely based its decision to grant the motion for judgment on the pleadings on its belief that 11 U.S.C. § 365(i)(2)(B) requires only that the trustee transfer such title as the trustee actually has in the property. Thus, consideration of the Conditions Agreement would not have affected the bankruptcy court's ultimate decision.

## V.  CONCLUSION

For the foregoing reasons, the Panel affirms both the order granting judgment on the pleadings and also the order denying the motion for reconsideration or, alternatively, for a new trial.

STEVEN RHODES, Bankruptcy Appellate Panel Judge, concurring in part and dissenting in part.

I concur in the majority's conclusions in Part IV.A.2. regarding the Hamerlys' equitable subordination claim. I dissent, however, from the majority's conclusion in Part IV.A.1., affirming the bankruptcy court's dismissal of the Hamerlys' claim under 11 U.S.C. § 365(i)(2)(B). Contrary to the bankruptcy judge's conclusion, the Hamerlys' complaint plainly alleged that their contract with the debtor required delivery of a clear title to the subject property. As a matter of law, under the plain language of § 365(i)(2)(B), if the Hamerlys prove that allegation, they are entitled to delivery of clear title from the trustee.

I.

Paragraph 18 of the Hamerlys' complaint alleges, "Under the Purchase Agreement, Salupo was to finance construction of the house on the property, provide a warranty deed to the Plaintiffs and deliver the property to the Plaintiffs free and clear of all liens and encumbrances and interests." The bankruptcy court dismissed the Hamerlys' claim based in part on its conclusion that, "As reviewed nothing in the Purchase Agreement, a two page document, executed between the Debtor and the Hamerlys requires the trustee to deliver any property title to the Hamerlys free and clear of liens." But the debtor's obligation to deliver clear title is precisely what the Hamerlys alleged in this paragraph of their complaint and what the Hamerlys must be given an opportunity to prove.

As the majority concedes in quoting from *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312-13 (5th Cir. 2002), the Hamerlys' complaint must be construed liberally and at this stage, their allegations must be viewed in the light most favorable to them. This means that even if the words of the purchase agreement do not recite an obligation to deliver clear title, as the bankruptcy court found, the Hamerlys must be given the opportunity to prove that the parties nevertheless so intended, as the Hamerlys' complaint alleged.

In this regard, it must be observed that it would be highly unusual for these parties to have agreed to delivery of a title that is subject to Fifth Third's mortgage. Experience dictates that much more commonly and ordinarily, the parties to a real estate purchase agreement do intend for the transferor to transfer clear title, especially when the real estate is a residential property.

## II.

If the Hamerlys do prove that the debtor was obligated by their purchase agreement to deliver clear title, then under the plain language of § 365(i)(2)(B), upon rejection of the contract in bankruptcy, the trustee is likewise obligated to deliver clear title. That section simply and plainly states that upon rejection, "the trustee shall deliver title to such purchaser in accordance with the provisions of such contract[.]" This language is neither ambiguous nor absurd. The Supreme Court has held that our role in these circumstances is only to apply the plain language as written. *Lamie v. U.S. Trustee*, 540 U.S. 526, 534, 124 S. Ct. 1023, 1030 (2004); *Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A.*, 530 U.S. 1, 6, 120 S. Ct. 1942, (2000); *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S. Ct. 1026 (1989).

The majority's rationale in circumventing the plain language result is strained at best. Initially, the majority argues that because the trustee abandoned the property by filing a no asset report, the trustee no longer has any title to transfer to the Hamerlys. This argument merely gives the trustee unilateral permission to violate both § 365(i)(2)(B) and the Hamerlys' substantive property rights, all without notice to them. Moreover, the argument proves too much, because it would relieve the trustee of the obligation to deliver title even subject to the mortgage.

The majority then concludes that § 365(i)(2)(B) must be interpreted to require delivery of only such title as the trustee acquires from the debtor. First, this argument is inconsistent with the majority's previous argument, which would relieve the trustee of any obligation to deliver any title. Second and more importantly, the majority fails to explain what compels that reading. As noted, nothing in the language of § 365(i)(2)(B) even suggests that reading, let alone compels it. It is true, as the majority asserts, that § 365(i)(2)(B) relieves the trustee of "all other obligations to perform under the contract," but the "all other" language explicitly excludes the very obligation at issue here - the obligation to "deliver title to such purchaser in accordance with the provisions of the contract."

Finally, the majority argues that the trustee's obligation under § 365(i)(2)(B) must be read in conjunction with the purchaser's right under § 365(i)(2)(A) to setoff damages against the purchase price. The majority then presumes that these damages may include any damages caused by the trustee's failure to deliver clear title. The difficulty with this presumption is that when the balance of the mortgage exceeds the balance of the purchase price, as here, the purchaser's rights under § 365(i)(2)(A) become meaningless. Nothing whatever in the language of § 365(i)(2)(B) suggests

that Congress intended that the purchaser's right to clear title upon payment of the balance of the purchase price would depend on whether the balance of the mortgage is less than the balance of the purchase price.

III.

Underlying Fifth Third's argument and the majority opinion is the suggestion that it is somehow unfair to give priority to a purchaser's contract right to clear title over a mortgagee's security interest. The suggestion is both irrelevant and mistaken. It is irrelevant because to creditors, there is very little that is ever fair about bankruptcy.

More specifically in this case, both the purchaser and the mortgage holder are creditors of the debtor. A judgment for the mortgage holder would be just as unfair to the purchaser as a judgment for the purchaser would be to the mortgage holder. Congress had to break this symmetry of unfairness and choose which creditor's claim to give a priority. By the plain language of § 365(i)(2)(B), Congress chose the purchaser's claim. It is not for a court to overturn this Congressional judgment based on its own sense of what is fair. *Hartford Underwriters*, 530 U.S. at 13-14, 120 S. Ct. 1942 ("[W]e do not sit to assess the relative merits of different approaches to various bankruptcy problems . . . . Achieving a better policy outcome - if what petitioner urges is that - is a task for Congress, not the courts."). *See also Official Committee of Unsecured Creditors of Cybergenics Corp. v. Chinery*, 330 F.3d 548 (3d Cir. 2003) ("[I]t is not for courts to substitute their policy judgment for Congress's."). Our notions of fairness are legally irrelevant.

Moreover, the suggestion of unfairness in a judgment for the purchaser under § 365(i)(2)(B) is also mistaken. Plainly, in the more usual case in which the balance of the purchase price is sufficient to pay off the mortgage, everyone will be satisfied. The purchaser will pay the full balance; the trustee will deliver clear title; and the mortgage holder will be paid in full. There may even be proceeds for the trustee to pay on the debtor's exemption or other creditors' claims. Inexplicably, despite the lack of unfairness to anyone in those happy circumstances, the majority opinion would nevertheless prohibit the bankruptcy court from applying § 365(i)(2)(B) to order that result.

But even if the balance of the purchase price is insufficient to pay off the mortgage, there is no unfairness in a judgment for the purchaser, because from an economic perspective, upon foreclosure, the mortgage holder will realize on its claim only what the property is worth. If the property is worth more than the balance of the purchase price, the mortgage holder might prefer to attempt to capture

that incremental advantage through foreclosure. But there would be no fairness in that attempt, because that incremental advantage would likely result from the purchaser's contribution to the construction. Moreover, that economic unfairness adheres even if the mortgage is recorded, because the agreement between the builder and the purchaser ordinarily would not require clear title before the final closing, and the mortgage holder would know that.

There are thus no reasonably foreseeable circumstances in which a mortgage holder should equitably realize more on its claim if it sells the property for market value at a foreclosure sale than if the purchaser pays the balance of the purchase price and obtains clear title under § 365(i)(2)(B). The allocation of rights under § 365(i)(2)(B) is perfectly consistent and aligned with these undeniable economic, legal and equitable realities.

Another important consideration further undermines any suggestion of unfairness in a judgment for the purchasers in these circumstances. The mortgage holder is in full control over the process, approval, and amounts of all construction draws, both before and after the builder and the purchaser enter into a purchase agreement. The mortgage holder is fully capable of appraising the market value of the property at any stage of construction and to protect itself against the risk of loss in the event of a sale at the market value, simply by limiting its exposure. Indeed, there is no rational business reason for a mortgage holder to lend into a building project more money than that project will then be worth in the market. On the other hand, the purchaser never has control over the relationship between the builder and the mortgage holder, or even any participation in it. Accordingly, as between the purchaser and the mortgage holder, it is entirely fair to allocate to the mortgage holder the full burden of any economic risk, including the risk of default or bankruptcy by the builder, as well as the risk that the mortgage balance that it controls will exceed the balance of the market value purchase price. It is therefore entirely fair for § 365(i)(2)(B) to require the mortgage holder to accept the balance of the purchase price while the purchaser obtains clear title. Any suggestion to the contrary is mistaken.

I would therefore vacate the bankruptcy court's judgment and remand for a determination of whether the debtor and the Hamerlys intended to obligate the debtor to deliver clear title upon payment of the purchase price. If so, the Hamerlys are entitled to the judgment they seek.